382 S.E.2d 558

## W.VA. NONINTOXICATING BEER COMMR.

v.

## A & H TAVERN, et al.

### No. 18628.

Supreme Court of Appeals of West Virginia.

July 3, 1989.

Jan L. Fox, Asst. Atty. Gen., Charleston, for WV Beer Comm.

Tom Rodd, Morgantown, for A & H Tavern.

WORKMAN, Justice:

The West Virginia Nonintoxicating Beer Commission ("Commission") appeals from an order of the Kanawha County Circuit Court directing the Nonintoxicating Beer Commissioner ("Commissioner") to issue a Class A beer license to the A & H Tavern. The Commissioner had previously refused to reissue the tavern's license because he had found it was not a "suitable place" for the sale of beer. The operators of the tavern argued before the Kanawha County Circuit Court that the Commissioner had employed the wrong criteria in judging the suitability of their establishment and abused his discretion in refusing to renew their license. The Commissioner's position is that he acted within his discretion in refusing to reissue the license. We agree and reverse.

On June 9, 1986, the Commissioner wrote the owners of the A & H Tavern declining to reissue their Class A beer license. The letter stated "[b]ecause of previous violations at the establishment, the premises to be licensed is not a suitable place for a Class A license." (Commissioner's letter of June 9, 1986). Additionally the Commissioner's letter cited *West Virginia Code* § 11–16–12(b) [1937] which is now amended to *Code,* 11–16–8(c)(2) [1986].[1] This *Code* section states "[t]he commissioner may refuse a license to any applicant under the provisions of this article if the commissioner shall be of the opinion: ... (2) That the place to be occupied by the applicant is not a suitable place; ...."

After receiving this notice, A & H Tavern filed a petition for a writ of mandamus before the Kanawha County Circuit Court on July 7, 1986. The circuit court held that since the license was not reissued rather than cancelled or revoked, this was a matter within the Commissioner's discretion and mandamus would not lie. The tavern owners were directed to the Administrative Procedures Act, *W.Va.Code* § 29A–5–1 *et seq.,* as amended, to request an administrative hearing. This administrative hearing was held on September 25, 1986, before a specially appointed hearing examiner. A & H Tavern argued that *Code,* 11–16–12(b) [1937] was a physical location statute, or in the alternative, that the evidence of conduct problems was insufficient to deny reis-

---

**1.** Although this article was amended and reenacted there was no change in this section's statutory language.

suance. In a written decision dated June 10, 1987, the hearing examiner held

> a "suitable place" in Chapter 11, Article 16, Section 8 of the West Virginia Code refers to the physical location and not to the activities occurring there, that there is insufficient proof that the ... (Licensee) did not have a suitable place, and that the Nonintoxicating Beer Commissioner acted arbitrarily in not renewing the license of the ... (Licensee) based on not having a suitable place.

Hearing examiner's opinion at 6.

The Commissioner petitioned the Kanawha County Circuit Court to reverse the decision. On September 8, 1987, that court affirmed the decision of the special hearing examiner. It is from that order that the Nonintoxicating Beer Commissioner appeals.

The evidence presented at the administrative hearing reveals that A & H Tavern was one of seventy bars in Morgantown, West Virginia. It ranked first in terms of the number of complaints received by the police. The tavern's reputation was one of "if you want to get into a fight, you go to A & H." (Hearing Transcript at 15, testimony of Michael Ward, neighbor). The local neighborhood society tried without success to have the city council declare the tavern a public nuisance.

The police and city council received multiple complaints from 1983 until June, 1986, when the tavern closed. Fights, loud noises, and litter problems made up the bulk of these complaints. In March, 1986, the son of a police officer pulled a knife on another customer, and a fight ensued. In April, 1986, a police officer's nephew became angry when asked to leave and broke a window. The nephew was prosecuted by the owners and convicted of assault and destruction of property. In April and May of 1986 the Morgantown police sent a computer printout and additional information to the Nonintoxicating Beer Commissioner demonstrating numerous visits to and complaints about the tavern. The Commissioner investigated the problem and on June 9, 1986, he wrote the current owners declining to reissue their Class A beer license.

The current owners introduced evidence showing they became half owners of A & H Tavern in the fall of 1985 and full owners in January 1986. The owners attempted to demonstrate that the negative reputation preceded their lease.

This case presents two issues. The first issue is whether the Nonintoxicating Beer Commissioner exceeded his discretion, or acted arbitrarily or capriciously in refusing to reissue a Class A beer license to A & H Tavern because the place was not a suitable place. The second issue is whether the owners were given clear notice why their license was not reissued so they could attempt to rebut this reason through the administrative appeals process.

The legislature has declared that it is in the public interest to regulate and control the sale of beer, and statutes regulating the sale of beer are "a necessary, proper and valid exercise of the State's police power...." *W.Va.Code* § 11–16–2 [1986]. It is well-settled law in West Virginia that the State's police power is broad and sweeping and this power may be delegated, within limits, by the Legislature to the executive branch to enact rules and regulations to protect the welfare, safety, and health of the public. *State ex rel. Barker v. Manchin*, 167 W.Va. 155, 279 S.E.2d 622, 631 (1981); *Tri–State Greyhound Racing, Inc. v. Johnson*, 160 W.Va. 33, 230 S.E.2d 837, 839 (1976). The statutes regulating beer are "intended for the protection of public safety, welfare, health, peace and morals and are further intended to eliminate, or to minimize to the extent practicable, the evils attendant to the unregulated, unlicensed, and unlawful" sale of beer. *Code,* 11–16–2. In order to further these goals the Legislature delegated to the Nonintoxicating Beer Commissioner all necessary power and authority to regulate the manufacture, sale, distribution, transportation, storage, and consumption of beer. *W.Va.Code* §§ 11–16–4(a) and 11–16–2 [1986].

▪ Among these delegated powers is the authority to license or refuse to license establishments which sell beer. *See State v. Huber*, 129 W.Va. 198, 40 S.E.2d 11, 19 (1946). All businesses which are licensed

are subject to some regulation. The amount of regulation permitted is determined by the type of business to be licensed. The state places more stringent regulations on businesses "within the category of social and economic evils, such as gaming, the liquor traffic and numerous others." *Tweel v. W. Va. Racing Comm'n,* 138 W.Va. 531, 76 S.E.2d 874, 880 (1953), *appeal dismissed,* 346 U.S. 869, 74 S.Ct. 123, 98 L.Ed. 379 (1953). *See also Tri–State Greyhound Racing,* 160 W.Va. at ——, 230 S.E.2d at 839. As a way of regulating "liquor traffic", the Legislature delegated to the Commissioner the exclusive power to grant and refuse licenses relating to the sale of beer. *Code,* 11–16–4(a). A license to sell beer is not a property right but is a privilege granted by the State to an individual for a specified time. *See State ex rel. Morris v. W. Va. Racing Comm'n,* 133 W.Va. 179, 55 S.E.2d 263, 270–71 (1949) (licensure for horse trainers). For the license to be reissued the licensee must be qualified, that is, must meet the guidelines outlined by the Legislature in the statutes and the commissioner in his rules and regulations. *Id.; Accord State ex rel. Perry v. Miller,* 171 W.Va. 509, 300 S.E.2d 622 (1983).

The Legislature gave the Commissioner the power to deny a beer license on three grounds. *W.Va.Code* § 11–16–8(c) [1986] lists these grounds as:

> The commissioner may refuse a license to any applicant under the provisions of this article if the commissioner shall be of the opinion: (1) [t]hat the applicant is not a suitable person to be licensed; (2) [t]hat the place to be occupied by the applicant is not a suitable place; or is within three hundred feet of any school or church ...; or, (3) [t]hat the license should not be issued for reason of conduct declared to be unlawful by this article.

Thus, the Nonintoxicating Beer Commissioner is vested with the discretion to determine suitable locations for the licensed sale of beer and suitable persons to receive such licenses. *Longwell v. Hodge,* 171 W.Va. 45, 49, 297 S.E.2d 820, 824 (W.Va.1982);

*Brackman's Inc. v. City of Huntington,* 126 W.Va. 21, 27 S.E.2d 71 (1943).

Additionally *W.Va.Code* § 11–16–18 [1986] identifies unlawful acts of the licensee. Included are "(7) [f]or any licensee to permit in his premises any lewd, immoral or improper entertainment, conduct or practice;" and "(12) [f]or any licensee to permit loud, boisterous or disorderly conduct of any kind upon his or her premises or to permit the use of loud musical instruments if either or any of the same may disturb the peace and quietude of the community wherein such business is located...."

■ These statutory sections delegate to the Commissioner the power to deny licensure, and establish guidelines for this denial. The commissioner of each administrative agency is charged with interpreting the statutes which regulate it. It is well-settled law in West Virginia that an administrative agency's interpretation of its statutes are given great weight unless clearly wrong. *See Dillon v. Board of Educ. of County of Mingo,* 171 W.Va. 631, 633–35, 301 S.E.2d 588, 590–91 (1983); Syl. Pt. 4, *Security National Bank & Trust v. First W. Va. Bancorp Inc.,* 166 W.Va. 775, 277 S.E.2d 613, 614 (1981), *appeal dismissed,* 454 U.S. 1131, 102 S.Ct. 986, 71 L.Ed.2d 284 (1982). The Commissioner testified that he and previous Nonintoxicating Beer Commissioners have interpreted that "a suitable place is where a place has not had a lot of trouble." It was his opinion that an unsuitable place was one "where they had trouble, fights, drunks, things like that." The Commissioner also testified that *Code,* 11–16–8(c)(2) had been frequently cited when a commissioner refused to reissue a license because an establishment disturbed the community.

However, the respondents argue that *Code,* 11–16–8(c)(2) must be interpreted more narrowly and should apply only to the location and structure of the building. The respondents' rationale for this position is that the remainder of *Code,* 11–8(c)(2) goes on to discuss the distance required between a beer establishment and a church or school. Special Hearing Examiner Snyder

agreed with this interpretation. He found the phrase "suitable place" to refer to the building only, and then found the tavern's building was suitable. Thus he did not reach the issue of whether the A & H Tavern created a noisy, troubled atmosphere which disturbed the peace and quietude of the surrounding community.

West Virginia case law instructs us that the word *or* is a conjunction which indicates the connected phrases are to be treated separately. *State v. Carter*, 168 W.Va. 90, 92, 282 S.E.2d 277, 279 (1981); *Koppers Co. v. Dailey*, 167 W.Va. 521, 280 S.E.2d 248, 251 n. 8 (1981). Obviously the Commissioner viewed the two phrases in *Code*, 11–16–8(c)(2) "the place to be occupied by the applicant is not a suitable place" and "within three hundred feet of any school or church" separately, and interpreted the meaning of a suitable place as one which did not disturb the peace and quietude of the community.

The Commissioner concedes that *Code*, 11–16–8(c)(3) which states, "[a] license should not be issued for reason of conduct declared to be unlawful by this article" would be more appropriate to deny reissuance of a license for fights and loud noises, and we agree. However, the utilization of *Code*, 11–16–8(c)(2) for this purpose is not precluded, provided the record reflects that the licensee had adequate notice of the substantive basis for the adverse action.

■ Adequate notice is required in administrative proceedings, and is necessary to allow the parties opportunity to prepare a defense and cross-examine witnesses. *McJunkin Corp. v. W.Va. Human Rights Comm'n*, 179 W.Va. 417, 369 S.E.2d 720, 723 (1988) (citing A. Neely, *Administrative Law in West Virginia* § 5.11 at 274 (1982)). "The purpose of notice requirements is to make certain ... [the parties are] ... aware of the impending proceeding and its substance with sufficient certainty to be in a position to answer and participate." *McJunkin*, 179 W.Va. at 420, 369 S.E.2d at 723.

■ The key remaining issue then is whether the Commissioner's notice of June 9, 1986, referring to "previous violations at the establishment" and citing *Code*, 11–16–12(b) [1937] met this requirement.

It is clear from the record that A & H Tavern understood what the Commissioner meant by a "suitable place" and "previous violations" with sufficient certainty to prepare and defend. They presented evidence at the hearing that: (1) the problems were present before the current owners took over; (2) the fights and noise at this establishment were the same as before, it was just that the police "had it in for them"; and (3) the noise complaints emanated from one individual who was unreasonable. Little to no evidence was presented by the respondents in the areas of health inspections and permits, lighting, bathroom facilities, size, and cleanliness. Clearly the notice informed the respondents why the Commissioner did not renew their Class A beer license.

For the reasons stated above, the Order of the Kanawha County Circuit Court is reversed and remanded with directions to reinstate the Order of the Commissioner refusing to reissue the Class A beer permit.

Reversed and Remanded.