**R.W.B. OF RIVERVIEW, INC.,
et al., Plaintiffs,**

v.

**Donald STEMPLE, Commissioner,
Alcohol Beverage Control
Commission, Defendant.**

No. Civ. A. 2:00–0552.

United States District Court,
S.D. West Virginia,
Charleston Division.

July 25, 2000.

Opinion Supplemented by
Aug. 18, 2000.

---

Kyle G. Lusk, Beckley, WV, J. Michael Murray, Jeremy A. Rosenbaum, Steven D. Shafron, Berkman, Gordon, Murray & De-Van, Cleveland, OH, for R.W.B. of Riverview, Inc., R.W.B. of Morgantown, Inc., R.W.B. of Clarksburg, Inc., R.W.B. of Beckley, Inc., R.W.B. of Smithville, Inc., R.W.B., of Wheeling, Inc., Fort Knocks, Inc., Academy, Inc., Cal';s Lounge, Inc.

Darrell V. McGraw, Jr., Jeffrey G. Blaydes, Scott E. Johnson, Office of Atty. Gen., Charleston, WV, for Donald Stemple.

### *MEMORANDUM OPINION AND ORDER GRANTING PRELIMINARY INJUNCTION*

HADEN, Chief Judge.

At a hearing on Plaintiffs' application for a preliminary injunction came Plaintiffs by J. Michael Murray, Jeremy A. Rosenbaum, and Kyle G. Lusk and came Defendant, in person, and by Jeffrey G. Blaydes, Gene Hal Williams, and Scott Johnson, Assistant Attorneys General of West Virginia. The parties submitted the issue on joint stipulations, oral arguments, and the briefs previously submitted. On that basis, the Court **GRANTS** the preliminary injunction application. A more expansive Memorandum Opinion and Order will follow.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The West Virginia Legislature enacted a law on March 11, 2000, effective from passage, "relating to regulating, restricting and placing a prohibition on additional exotic entertainment facilities." (Br. in Supp. of Pls.' Mot. for a T.R.O. and for a Prelim.Inj., Ex. A. at 1.) The statute created Section twenty-three of Chapter sixty, Article four of the West Virginia Code "relating to regulating, restricting and placing a prohibition on additional exotic entertainment facilities." (*Id.*) " 'Exotic entertainment' means live nude dancing, nude service personnel or live nude entertainment, and 'nude' means any state of undress in which male or female genitalia or female breasts are exposed." (*Id.* at 2.)

The statute provides a brief and very limited opportunity for exotic entertainment facility licensing and imposes criminal penalties on those who engage in unlicensed exotic entertainment. Any person who was operating a commercial facility offering exotic entertainment on March 11, 2000 could apply to the Defendant Alcohol Beverage Control Commissioner (Commissioner) for a license until July 1, 2000. *See* W.Va.Code § 60–4–23(e). "Thereafter no application for license may be received by the commissioner." *Id.*

On June 30, 2000, in response to Plaintiffs' application and with notice to Defendant, the Court issued a temporary restraining order (TRO) enjoining Defendant

and his agents from enforcing the new statute and the regulations promulgated thereunder. By Order of July 10, 2000, the Court *sua sponte* continued the TRO until this date and scheduled the preliminary injunction hearing for today.

## II. DISCUSSION

### A. Preliminary Injunction Standard

The Court applies a balancing test to determine whether a preliminary injunction is properly granted. *See Blackwelder Furniture Co. v. Seilig Mfg. Co.*, 550 F.2d 189 (4th Cir.1977). The sequential application of the *Blackwelder* factors was discussed most recently in *Steakhouse, Inc. v. City of Raleigh, North Carolina:*

> In deciding whether to grant a preliminary injunction, the district court is to consider three factors. First, it must balance the likelihood of irreparable harm to the plaintiff if the injunction is refused against the likelihood of irreparable harm to the defendant if it is granted. Second, the court should consider the likelihood that the plaintiff will succeed on the merits. The more the balance of harms leans away from the plaintiff, the stronger his showing on the merits must be. Finally, the court must consider the public interest.

166 F.3d 634, 637 (4th Cir.1999) (citing *Blackwelder*). The plaintiff bears the burden of proving the factors favor the grant of an injunction. *See Manning v. Hunt*, 119 F.3d 254, 263 (4th Cir.1997).

In applying the balancing test, the most important factors are the two factors regarding the balancing of harms. *Id.* A plaintiff must demonstrate harm that is " 'neither remote nor speculative, but actual and imminent.' " *Id.* (quoting *Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969, 975 (2nd Cir.1989)). If, after balancing the harm to the plaintiffs if the injunction were not granted against the harm to the defendants if the injunction were granted,

the balance 'tips decidedly' in favor of the plaintiff, a preliminary injunction will be granted if 'the plaintiff has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them fair ground for litigation and thus for more deliberate investigation.' As the balance tips away from the plaintiff, a stronger showing on the merits is required.

*Id.* (citations omitted).

Finally, the Court notes that " '[T]he grant of interim relief [is] an extraordinary remedy involving the exercise of a very far-reaching power, which is to be applied only in [the] limited circumstances which clearly demand it.' " *Steakhouse*, 166 F.3d at 637 (quoting *Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 811 (4th Cir.1991)).

### B. West Virginia Statute Regulating Exotic Entertainment Facilities

As recently as March 2000, the Supreme Court reaffirmed, "nude dancing ... is expressive conduct," although "it falls only within the outer ambit of the First Amendment's protection." *City of Erie v. Pap's A.M.*, 529 U.S. 277, 120 S.Ct. 1382, 1391, 146 L.Ed.2d 265 (2000). The statute at issue has the stated purpose of regulating, restricting, and prohibiting additional exotic entertainment, i.e, nude dancing, facilities. To carry out this object, the statute allows the Commissioner to issue licenses only to persons operating such facilities on March 11, 2000. Exotic entertainment license applications must be made by July 1, 2000. No others may ever apply. Cursory analysis demonstrates these conditions impose a prior, permanent, and infinite restraint on citizens wishing to engage in the constitutionally protected expressive activity of nude dancing. Accordingly, the Court **FINDS** and **CONCLUDES** the statute at issue involves a prior restraint of expressive conduct protected under the First Amendment of Constitution of the

United States, at least for those individuals who may never be permitted to apply.

Any licensing scheme to engage in constitutionally protected expression must satisfy procedural and substantive safeguards required by *Freedman v. Maryland*, 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965). "Two evils" not tolerated in prior restraints are 1) unbridled discretion in the hands of a government official or agency and 2) failure to place limits on the time in which decisionmaker must act to issue the license. *See FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 225–26, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990). This statute provides, "The commissioner *may* issue a license to a person complying with the provisions of this chapter." W.Va. Code § 60–4–23(e) (emphasis added). "May" grants the Commissioner discretion to issue or not issue licenses, even though an applicant complies with every requirement of the law.

Under the regulations promulgated pursuant to the statute, a licensee must be a "bona fide club of *good reputation* in the community in which it operates." 175 W.Va.C.S.R. § 7.3.6.1.3 (emphasis added). Ownership and management must involve "suitable persons" at a "suitable place." *Id.* Owners must be "of good moral character or repute," *id.* § 3.6.2.j, and may not have "the *general reputation* of drinking alcoholic beverages or nonintoxicating beer to excess." *Id.* § 3.6.2.m (emphasis added). Issuance of a license may not be "detrimental to the interest, morals, safety or welfare of the public." *Id.* § 3.6.4.

These are just the sort of "boundless terms" and manipulable "malleable concepts" our Court of Appeals found constitutionally unacceptable because they clothe a decisionmaker with unfettered discretion. *Steakhouse*, 166 F.3d at 639. To meet constitutional muster, a licensing scheme must, *inter alia,* "sufficiently cabin the decision-maker's discretion." *Id.* at

638. Accordingly, the Court **FINDS** and **CONCLUDES** that the exotic entertainment statute confers unlimited discretion on the Commissioner in contravention of constitutional requirements.[1]

The Supreme Court held in *Elrod v. Burns*, "The loss of First Amendment rights, for even minimal periods of time, unquestionably constitutes irreparable injury." 427 U.S. 347, 353, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976) (citing *New York Times v. United States*, 403 U.S. 713, 91 S.Ct. 2140, 29 L.Ed.2d 822 (1971)). The Defendant Commissioner, on the other hand, will not be harmed by the Court's injunction of his ability to issue licenses under a scheme that impedes the constitutional rights of West Virginia citizens and threatens them with criminal prosecution.

## III. FINDINGS AND CONCLUSIONS

The balance of harms tips decidedly in favor of Plaintiffs. Additionally, as discussed above Plaintiffs have shown a probability they will prevail on the merits. Finally, the public interest is best served by unrelenting protection of the First Amendment rights of all its citizens, even those whose expressive conduct may be distasteful and offensive to many. Therefore, the Court **GRANTS** the preliminary injunction requested by Plaintiffs. Defendant Commissioner and his officers, agents, servants and employees and all persons in active concert or participation with them are **ENJOINED** from implementing or enforcing West Virginia Code § 60–4–23 and West Virginia Legislative Rules, Title 175, Series 7, pending final judgment on the merits.

The Clerk is directed to send a copy of this Memorandum Opinion and Order to counsel of record by facsimile transmission and first class mail and publish on the Court website at www.wvsd.uscourts.gov.

---

1. The Court does not decide at this time whether the unconstitutional provisions of this statute are severable, nor whether the statute suffers from additional constitutional infirmities.

## MEMORANDUM OPINION AND SHOW CAUSE ORDER

On July 25, 2000, following a preliminary injunction hearing, the Court issued its Memorandum Opinion and Order Granting Preliminary Injunction. This Opinion elaborates and enlarges the initial ruling.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On March 11, 2000 the West Virginia Legislature enacted a law creating a new section of the West Virginia Code, section 60–4–23, "regulating, restricting and placing a prohibition on additional exotic entertainment facilities." Under the statute, licenses are required for facilities offering "exotic entertainment," that is, "live nude dancing, nude service personnel or live nude entertainment." W.Va.Code § 60–4–23(a)(1). "Nude" means "any state of undress in which male or female genitalia or female breasts are exposed." *Id.*

Effective from passage, the statute provides a brief and very limited opportunity for exotic entertainment facility licensing, and imposes criminal penalties on those who engage in unlicensed exotic entertainment.[1] Any person who was operating a commercial facility offering exotic entertainment on March 11, 2000 could apply to the Defendant Alcohol Beverage Control Commissioner (Commissioner) for a license from March 11 until July 1, 2000.[2] *See* W.Va.Code § 60–4–23(e). "[T]hereafter no application for license may be received by the commissioner." *Id.* Licenses which lapse, are revoked or expire may not be reissued. *See id.*

On June 30, the day before the exotic entertainment licensing period was to end forever, in response to Plaintiffs' application and with notice to Defendant, the Court issued a temporary restraining order (TRO) enjoining Defendant and his agents from enforcing the new statute and regulations promulgated thereunder. By a second Order of July 10, 2000, the Court *sua sponte* continued the TRO until July 25, 2000 and scheduled a preliminary injunction hearing for that date, after which the initial, brief Memorandum Opinion and Order Granting Preliminary Injunction issued.

The Court found and concluded the statute 1) imposed a prior restraint on exotic entertainment, expressive conduct, protected by the First Amendment, and 2) conferred unlimited discretion on the Commissioner to grant or withhold licensing of exotic entertainment facilities. On that basis the preliminary injunction was granted, enjoining the Commissioner or his agents from implementing or enforcing West Virginia Code § 60–4–23 and West Virginia Legislative Rules, Title 175, Series 7, pending final judgment on the merits. This more expansive Memorandum Opinion and Order was promised.

## II. DISCUSSION

### A. Preliminary Injunction Standard

The Court applies a balancing test to determine whether a preliminary injunction is properly granted. *See Blackwelder Furniture Co. v. Seilig Mfg. Co.*, 550 F.2d 189 (4th Cir.1977). The sequential application of the *Blackwelder* factors was discussed most recently in *Steakhouse, Inc. v. City of Raleigh, North Carolina:*

> In deciding whether to grant a preliminary injunction, the district court is to consider three factors. First, it must balance the likelihood of irreparable harm to the plaintiff if the injunction is refused against the likelihood of irreparable harm to the defendant if it is granted. Second, the court should con-

---

1. Fines from one to three thousand dollars or imprisonment up to one year, or both, are penalties imposable for violation of the section.

2. The statute ordered the Commissioner to issue an emergency legislative rule to effectuate the law by May 1, 2000. Thereafter, the Commissioner issued regulations, Title 175, Series 7, "Licensing of Exotic Entertainment Facilities."

sider the likelihood that the plaintiff will succeed on the merits. The more the balance of harms leans away from the plaintiff, the stronger his showing on the merits must be. Finally, the court must consider the public interest.

166 F.3d 634, 637 (4th Cir.1999) (citing *Blackwelder*). The plaintiff bears the burden of proving the factors favor the grant of an injunction. *See Manning v. Hunt,* 119 F.3d 254, 263 (4th Cir.1997).

In applying the balancing test, the most important factors are the two factors regarding the balancing of harms. *See id.* A plaintiff must demonstrate harm that is " 'neither remote nor speculative, but actual and imminent.' " *Id.* (quoting *Tucker Anthony Realty Corp. v. Schlesinger,* 888 F.2d 969, 975 (2nd Cir.1989)). If, after balancing the harm to the plaintiffs if the injunction were not granted against the harm to the defendants if the injunction were granted,

> the balance 'tips decidedly' in favor of the plaintiff, a preliminary injunction will be granted if 'the plaintiff has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them fair ground for litigation and thus for more deliberate investigation.' As the balance tips away from the plaintiff, a stronger showing on the merits is required.

*Id.* (citations omitted).

Finally, the Court notes that " '[T]he grant of interim relief [is] an extraordinary remedy involving the exercise of a very far-reaching power, which is to be applied only in [the] limited circumstances which

clearly demand it.' " *Steakhouse,* 166 F.3d at 637 (quoting *Direx Israel, Ltd. v. Breakthrough Med. Corp.,* 952 F.2d 802, 811 (4th Cir.1991)).

## B. The Purpose of the West Virginia Exotic Entertainment Statute

Defendant proposes West Virginia's exotic entertainment licensing scheme is designed to regulate "juice bars" and the pernicious secondary effects of such entertainment. (Def.'s Supplemental Br. in Opp'n to Pls.' Mot. for T.R.O. and Prelim.Inj. (Def.'s Supp.Br.) at 16–17.) Juice bars are unlicensed entities said to be offering nude dancing, and dispensing alcoholic beverages. According to Defendant, the illegal sale of beer and liquor at these establishments has become commonplace, (*see* Def.'s Supp.Br. at 6–7; Def.'s Mem. in Opp'n to Mot. for T.R.O. and for Prelim.Inj. at 1–2), often as an "all you can drink proposition." The new statute was enacted in an attempt to regulate juice bars and limit their secondary effects, such as drunken driving, larcenies, assaults, and narcotics use.

Defendant's characterization of the statutory purpose poses two significant problems. First, the unlicensed sale of alcohol in juice bars is already illegal.[3] But second, and more important for the Court's analysis, the exotic entertainment statute is bold and clear on its face: its purpose is to regulate, restrict, and prohibit additional exotic entertainment, i.e., nude dancing and entertainment, facilities. No word in this law refers to juice bars or their secondary effects. In fact, the statute applies "whether or not alcoholic liquor, wine or

---

**3.** Under West Virginia law, alcoholic liquors may not be sold for consumption on the premises where sold, without licenses and regulation under West Virginia Code Chapter 60, Article 7. Even Defendant notes in his brief that what juice bars are doing is illegal. Thus, statutes were already in place under which the unlicensed sale of alcohol may be regulated and sanctioned.

Defendant also argues the only method to sanction juice bars before passage of this law was through criminal prosecution, (Def.'s

Mem. in Opp'n to Mot. for T.R.O. at 2.) However, criminal prosecution is still the only method to sanction juice bars in the exotic entertainment statute except, of course, denying them a license, which is a sanction only if they are prosecuted for lacking one. Recognizing this, the Commissioner argued that county prosecutors were necessary parties to this action because they are the ones who impose criminal penalties. (Def.'s Supp.Br. at 12.)

nonalcoholic beer is legally kept, served, sold or dispensed in a facility, or permitted to be brought by others into a facility and whether or not such person holds any other license or permit issued pursuant to chapter sixty of this code." W.Va.Code § 60–4–23(b). In other words, this law has *nothing* to do with the sale or service of alcohol, juice bars, or their pernicious secondary effects, and everything to do with live nude dancing and entertainment.

The Court agrees West Virginia may regulate the sale and service of alcoholic beverages. That it has done—and may elaborate upon. *See* W.Va.Code § 60–1–1 *et seq.* The State may regulate the secondary effects of facilities providing alcohol or exotic entertainment. *See e.g., City of Renton v. Playtime Theatres, Inc.,* 475 U.S. 41, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986). The Court even agrees that, under *City of Erie v. Pap's A.M.,* 529 U.S. 277, 120 S.Ct. 1382, 146 L.Ed.2d 265 (2000), the State may require certain covering to prevent total public nudity.[4] The West Virginia exotic entertainment statute, however, by its clear and unequivocal language, does none of these things. In the short term, the statute requires a license before the operator of commercial facilities may offer nude dancing or nude entertainment. In the long term, the statute is designed to reduce the number of nude dancing and entertainment facilities, if not eliminate them entirely.

Under its provisions, only facilities offering exotic entertainment on March 11, 2000 could apply for a license. Applications could be tendered only between March 11 and July 1, 2000. No further applications will ever be accepted, and licenses which lapse, are revoked, or expire may never be renewed. This scheme belies Defendant's argument that no ban or elimination of expression is intended. As

Justice Powell observed in concurrence in *Young v. American Mini Theatres,* 427 U.S. 50, 82 n. 4, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976), "[H]ad [Detroit] been concerned with restricting the message purveyed by adult theaters, it would have tried to close them or restrict their number rather than circumscribe their choice as to location." West Virginia has undertaken to restrict severely and ultimately phase out nude dancing and entertainment venues. That is why the statute places a "prohibition on additional exotic entertainment facilities." Suffice it to say, there will be no more, and eventually there will be many fewer.

The purpose of the exotic entertainment statute is simple and straightforward: to license, regulate, and reduce the number of facilities offering nude dancing, nude entertainment, and nude service personnel. This statute does not regulate nudity as conduct alone. It targets nudity that has an erotic message, nude dancing, as well as nude entertainment, which could express any message art is capable of conveying. The Court **FINDS** and **CONCLUDES** exotic ("nude") entertainment statute is, on its face and by its explicit terms, a scheme for licensing, regulating, and ultimately making unavailable venues for any live art that employs nudity to convey its message.

### C. Nude Expressive Activity is Protected by the First Amendment

Defendant justifies the statutory licensing scheme at issue here by minimizing the importance of nude dancing: an expressive mode of severely limited societal good that has received only lukewarm recognition from the Supreme Court. "It disserves the memories of America's civil rights heroes who fought for the equality and dignity of humanity to equate their courageous

---

**4.** In *City of Erie,* the Supreme Court held a public nudity statute requiring G-strings and pasties on people otherwise nude in public constitutionally permissible. Defendant argues West Virginia's exotic entertainment statute is therefore also constitutional. Were

this a public nudity statute requiring pasties and G-strings, the argument probably would prevail. *See City of Erie,* 120 S.Ct. at 1388 (offering a the precise formulation of a constitutional statute so regulating public nudity). This is not that statute.

acts with that of nude exotic dancing." (Def.'s Supp.Br. at 5.) Nude dancing and entertainment, precisely because of the erotic message they convey, are anathema to some, distasteful to many, but intriguing to others.

Nevertheless, in its most recent pronouncement on the subject the Supreme Court stated, "Nude dancing . . . is expressive conduct, although we think that it falls only within the outer ambit of the First Amendment's protection." *City of Erie*, 120 S.Ct. at 1391 (citing *Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, 111 S.Ct. 2456, 115 L.Ed.2d 504 (1991)). The Court held the particular ordinance Erie passed was a "content neutral" public nudity statute, *id.* at 1388, which could, therefore, require a fully opaque covering over the genitals, pubic hair, buttocks, and female breast. "[G]overnment restrictions on public nudity such as the ordinance at issue here should be evaluated under the framework set forth in *O'Brien*[5] for content-neutral restrictions on symbolic speech." *Id.* at 1391.

Defendant proposes *City of Erie* controls, and because West Virginia's exotic entertainment scheme is designed to regulate "juice bars" and the pernicious secondary effects of such entertainment, the Court should apply the *O'Brien* test[6] and uphold the statute.

■ The West Virginia statute, however, is not directed at conduct. It does not outlaw public nudity, juice bars, or associated drunken driving, larceny, assault, or narcotics use. The statute requires licenses for facilities offering nude dancing and nude entertainment. Whatever the Supreme Court intends by ambit-analysis and its location of nude dancing in the outer ambit, this Court understands nude dancing remains expressive conduct within the First Amendment's protection.

Interestingly, Defendant concentrated his argument exclusively on the dangers and bad effects of nude dancing. Plaintiffs, in turn, also focused on nude dancing, that being a main commercial offering of their businesses.[7] The statute, however, also covers nude entertainment, a far broader category, which presumably includes the well accepted artistic performances of "Equus," "Hair," "Oh, Calcutta," and any other play, opera, musical, or "entertainment" in which nudity is a component.[8] To the extent the statute requires licensing for nude entertainment, it extends broadly over many recognized types of free expression. The Court further **FINDS** and **CONCLUDES** that nude dancing and entertainment remain expres-

5. *United States v. O'Brien*, 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968).

6. Under *O'Brien*, where a statute sets forth content-neutral restrictions on symbolic speech, a court analyzes constitutionality by a four-part test:

(a) is the government regulation within the constitutional power of the government,

(b) does the regulation further an important government interest,

(c) is the government interest unrelated to the suppression of free expression, and

(d) is the restriction no greater than is essential to further the government interest?

As the discussion thus far and below demonstrates, the exotic entertainment statute fails prongs (c) and likely (d) of the *O'Brien* test, thus making untenable prongs (a) and (b).

7. Plaintiffs' briefs and argument also focused on prior restraint problems with the statute, although they have reserved a number of broad areas of First Amendment jurisprudence for future challenge, including overbreadth and vagueness. (*See* Br. in Supp. of Pls' Mot. at 8 n. 1.) The Court does not address the potential overbreadth and/or vagueness problems created with regard to "nude entertainment" at this time because, except for Plaintiffs' single reference at oral argument, the parties have not mentioned them.

8. Perhaps the Commissioner never considered the range of performances nude entertainment might encompass, for regulations requiring, e.g., suitable kitchens capable of preparing a freshly cooked meal, seem inappropos when applied to theater performances of "Equus," and "the like." *See* 175 W.Va. C.S.R. § 7.4.11.2.

sive activity protected by the First Amendment of the United States Constitution.

### D. Licensing Statute as Prior Restraint of Free Expression

There is a special presumption under the First Amendment against the use of prior restraints. *See Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 96 S.Ct. 2791, 49 L.Ed.2d 683 (1976) (Prior restraints "are the most serious and the least tolerable infringement on First Amendment rights."). It is well settled "that in the area of free expression a licensing statute placing unbridled discretion in the hands of a government official or agency constitutes a prior restraint and may result in censorship." *11126 Baltimore Boulevard, Inc. v. Prince George's County, Md.*, 58 F.3d 988, 994 (4th Cir.1995) (quoting *City of Lakewood v. Plain Dealer Publishing Co.*, 486 U.S. 750, 757, 108 S.Ct. 2138, 100 L.Ed.2d 771 (1988)). "Nor can it be doubted that a scheme establishing a prior restraint on protected speech that places unbridled discretion in the decisionmaker by failing to impose either objective standards for decision or adequate procedural safeguards creates an impermissible risk of suppression with every application." *Id.* (citing *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990)).

■ Although the exotic entertainment statute is a scheme licensing expressive activity, Defendant proposes initially that prior restraint analysis is inapplicable because cases such as *Baltimore Boulevard* dealt with time-sensitive written and spoken messages. In contrast, however, as our Court of Appeals famously phrased it, "Topless dancing does not go similarly stale—it tends not to be keyed to external events, and the strength of whatever message it conveys remains more or less constant over time." *Steakhouse, Incorporated v. City of Raleigh, NC*, 166 F.3d 634, 641 (4th Cir.1999). This distinction may— or may not—alter analysis of how timely license application must be handled, but it does not affect whether a statute imposes a prior restraint. Regarding special use permits for topless dancing bars, the court instructed in *Steakhouse*, "an ordinance acts as [a prior] restraint when 'it prohibits [adult establishments] from operating anywhere within the [City] until permission in the form of a special exception has been granted.'" *Id.* at 638 (quoting *Baltimore Boulevard*, 58 F.3d at 995). Under the exotic entertainment statute at issue, facilities offering nude dancing or entertainment cannot operate anywhere in the State until permission in the form of a license has been granted. That is definitive of a prior restraint and cannot stand under First Amendment scrutiny.

Defendant also ignores the total ban on exotic entertainment licenses for anyone who was not providing such entertainment on March 11, 2000 and for anyone who did not apply for a license by July 1, 2000. That this effect is deliberate is evidenced by the statement of purpose: "to *prohibit additional* exotic entertainment facilities." W.Va.Code § 60–4–23 (emphasis added). There can never be more than were extant on the day in March when the legislation became effective. All others, including future generations yet unborn, suffer not just a prior restraint, but a permanent denial of their right to offer or enjoy this expressive activity in commercial establishments. In effect, the State has erected a permanent procedural barrier to the acquisition of exotic entertainment licenses: not only will there be no review and no appeal, but for many there will not even be a right to apply.

### 1. Commissioner's discretion unbridled

■ Any licensing scheme to engage in constitutionally protected expression must satisfy procedural and substantive safeguards required by *Freedman v. Maryland*, 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965). "Two evils" not tolerated in prior restraints are 1) unbridled discretion in the hands of a government official or

agency and 2) failure to place limits on the time in which decisionmaker must act to issue the license.[9] *See FW/PBS, Inc. v. City of Dallas,* 493 U.S. 215, 225–26, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990).

The Court previously examined the statute and regulations promulgated by the Commissioner thereunder and noticed abundant examples of unbridled discretion. *See R.W.B. of Riverview, Inc. v. Stemple,* No. 2:00–0552, slip op. at 5–6 (S.D.W.Va. July 25, 2000). For example, the statute provides, "The commissioner *may* issue a license to a person complying with the provisions of this chapter." W.Va.Code § 60–4–23(e) (emphasis added). "May" grants the Commissioner discretion to issue or not issue licenses, even though an applicant complies with every requirement of the law.

Under the regulations, a licensee must be a "bona fide club of *good reputation* in the community in which it operates." 175 W.Va.C.S.R. § 7.3.6.1.3 (emphasis added). Ownership and management must involve "suitable persons" at a "suitable place." *Id.* Owners must be "of good moral character or repute," *id.* § 3.6.2.j, and may not have "the *general reputation* of drinking alcoholic beverages or nonintoxicating beer to excess." *Id.* § 3.6.2.m (emphasis added). Issuance of a license may not be "detrimental to the interest, morals, safety or welfare of the public." *Id.* § 3.6.4.

■ These are just the sort of "boundless terms" and manipulable "malleable concepts" our Court of Appeals held constitutionally unacceptable because they clothe a decisionmaker with unfettered discretion. *Steakhouse,* 166 F.3d at 639. To meet constitutional muster, a licensing scheme must, *inter alia,* "sufficiently cabin the decision-maker's discretion." *Id.* at 638.

9. Defendant argues that the statute incorporates the licensure and regulation provisions for private clubs found in W.Va.Code § 60–7, providing for timely decision and review. Even if the review process for the severely limited number of applications the statute allows were constitutionally adequate, it is no

The numerous cases Defendant cites in which the West Virginia Supreme Court of Appeals has "cabined" the Commissioner's discretion in issuing private club, i.e., liquor, licenses are inapposite. *See e.g., W.Va. Nonintoxicating Beer Commr. v. A & H Tavern,* 181 W.Va. 364, 382 S.E.2d 558 (1989). As syllabus point 2 of *A & H* instructs, "There is no inherent right in any individual … to engage in a business which the state, in the exercise of the police power, has placed under surveillance and permits only as a privilege or franchise." *Id.* In contradistinction, persons offering nude dancers and nude entertainment have an inherent, constitutional right to engage in the activity. In the First Amendment, free expression context, "[p]ermitting government officials unbridled discretion in determining whether to allow protected speech presents an unacceptable risk of both indefinitely suppressing and chilling protected speech." *Baltimore Boulevard,* 58 F.3d at 994 (citations omitted).

## 2. Standardless licenses appropriate for facial challenge

The evils of standardless licensing "can be effectively alleviated only through a facial challenge." *City of Lakewood,* 486 U.S. at 757, 108 S.Ct. 2138. As the Court explained,

> First, the mere existence of the licensor's unfettered discretion [intimidates] parties into censoring their own speech, even if the discretion and power are never actually abused…. Second, the absence of express standards makes it difficult to distinguish, "as applied," between a licensor's legitimate denial of a permit and its illegitimate abuse of censorial power.

more than a pretense because it applies only to license applications tendered in the brief period of March 11 to July 1, 2000, and never again. Accordingly, the Court declines to analyze time limits and review processes whose application is hypothetical, at best, for any but the favored few.

*Id.* "When these risks are threatened to a significant degree by state regulation, courts must permit those subject to the laws to bring an immediate facial challenge." *Baltimore Boulevard,* 58 F.3d at 994. For these reasons, the Court permitted Plaintiffs' facial challenge to the West Virginia exotic entertainment statute.

## III. FINDINGS AND CONCLUSIONS

The Supreme Court held in *Elrod v. Burns,* "The loss of First Amendment rights, for even minimal periods of time, unquestionably constitutes irreparable injury." 427 U.S. 347, 353, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976) (citing *New York Times v. United States,* 403 U.S. 713, 91 S.Ct. 2140, 29 L.Ed.2d 822 (1971)). The Defendant Commissioner, on the other hand, will not be harmed by the Court's injunction of his ability to issue licenses under a scheme that impedes the constitutional rights of West Virginia citizens and threatens them with criminal prosecution. West Virginia's exotic entertainment limited licensing scheme obstructs the free exercise of citizens' First Amendment rights and thus, the balance of harms tips decidedly in favor of Plaintiffs. Were this statutory scheme to be implemented, the constitutional harms would be actual and immediate.

As this Court previously held, the public interest is best served by unrelenting protection of the First Amendment rights of all its citizens, even those whose expressive conduct may be distasteful and offensive to many.

After careful consideration of the merits of this action, it appears the Court has resolved all issues raised and supported by briefing in favor of Plaintiffs. Accordingly, Defendant is **ORDERED** to show cause why a permanent injunction should not issue and the case be dismissed with prejudice. The Court schedules a show cause hearing for **Friday, September 22, 2000 at 9:30 a.m.**

The Court's Preliminary Injunction Order, enjoining Defendant Commissioner and his officers, agents, servants and employees and all persons in active concert or participation with them from implementing or enforcing West Virginia Code § 60–4–23 and West Virginia Legislative Rules, Title 175, Series 7, pending final judgment on the merits, shall continue in full force and effect.

The Clerk is directed to send a copy of this Memorandum Opinion and Show Cause Order to counsel of record and post this published opinion at http://www.wvsd.uscourts.gov.