428 S.E.2d 44

CDS, INC., d/b/a Power Dome,
Petitioner Below, Appellee,

v.

Harry G. CAMPER, Jr., Administrator,
Alcohol Beverage Control Administra-
tion, Department of Taxation and Reve-
nue, State of West Virginia, Respon-
dents Below, Appellants.

No. 21228.

Supreme Court of Appeals of
West Virginia.

Submitted Jan. 19, 1993.

Decided Feb. 11, 1993.

**64**

Richard G. Gay, Berkeley Springs, for appellee.

Mario J. Palumbo, Atty. Gen., Andrew F. Tarr, Asst. Atty. Gen., Charleston, for appellants.

PER CURIAM:

Harry G. Camper, Jr., the Commissioner of the West Virginia Alcohol Beverage Control Commission (ABC), appeals an order of the Circuit Court of Kanawha County denying his motion for reconsideration and reaffirming an order directing him to issue CDS, Inc., d/b/a Power Dome, the appropriate licenses to operate a private club and to sell non-intoxicating beer. On appeal, the Commissioner argues that the circuit court should have remanded the case to him to supplement the record because his denial of CDS's applications was based, in part, on investigations that were not included in the evidence considered by the circuit court. Because the circuit court did not consider all of the evidence obtained by the Commissioner, the case is remanded to the Commissioner to supplement the record.

In October 1991, CDS filed applications with the ABC to operate a private club and for a license to sell non-intoxicating beer.[1] Power Dome, CDS's proposed club, is to be located in a former supermarket along State Route 11 near Martinsburg, Berkeley County, West Virginia. Because the Commissioner received several written and verbal protests before CDS's applications were filed, the Commissioner personally inspected the club's proposed site in September 1991. A public hearing, conducted by the Commissioner personally, attended by approximately 150 people, was held on November 6, 1991. The only favorable witness was CDS's president, and the opposing witnesses included area residents, business persons, the Sheriff of Berkeley County and three members of the Berkeley County Commission. The opposing witnesses said that another club, especially a large club attracting out-of-town clients, would intensify the problems of drunk driving and traffic congestion, increase the amount of crime, and change the character of the neighborhood.

---

1. Although both parties agree that CDS applied for licenses to operate a private club and to sell nonintoxicating beer, the only application included in the record before this Court was for a private club.

On the day of the hearing the Commissioner and his staff inspected the exterior of the proposed club and the surrounding area. On the day after the hearing, at the invitation of CDS, the Commissioner inspected the proposed club's interior, exterior and parking lot. The Commissioner also toured the immediate vicinity including a residential neighborhood.

On November 15, 1991, the Commissioner denied CDS's application because of (1) problems relating to the neighborhood's peace and good order, (2) an adverse impact on property values and (3) an adverse impact on the public welfare. The Commissioner was particularly concerned because CDS planned to attract large crowds by featuring live bands on the weekends.

At CDS's request a second public hearing was held on December 16, 1991. At the second hearing, CDS submitted various permits relating to the club's physical plant and in addition to CDS's two owners, two other witnesses spoke in favor of the club. One of the favorable witnesses was an attorney and the other was an operator of a local private club who did not foresee any unusual noise or other problems relating to the proposed club. The opposing witnesses included the sheriff, two members of the W. Va. House of Delegates, area residents and local business persons. The opposing witnesses reiterated the problems outlined in the earlier public hearing.

On January 28, 1992, the Commissioner affirmed his initial order denying CDS's license applications. Although both the Commissioner's initial and the final orders referred to the Commissioner's on-site inspections, the record contained no separate evidence of the inspections. CDS appealed the Commissioner's final order to the circuit court, who found no direct evidence showing that the proposed club would create a nuisance or overflow, an adverse affect on adjacent businesses, or an adverse affect on the traffic on State Route 11.

The only evidence considered by the circuit court were the transcripts of the two public hearings.

After the circuit court reversed the Commissioner's order, the Commissioner filed a motion to reconsider requesting that if the direct evidence was insufficient to uphold his decision, the case be remanded to him to include specific evidence of his on-site inspections. After the circuit court denied his motion to reconsider, the Commissioner appealed to this Court.

"It is well-settled law in West Virginia that the State's police power is broad and sweeping and this power may be delegated, within limits, by the Legislature to the executive branch to enact rules and regulations to protect the welfare, safety, and health of the public. (Citations omitted)." *W. Va. Nonintoxicating Beer Comm'r v. A & H Tavern*, 181 W.Va. 364, 366, 382 S.E.2d 558, 560 (1989). It is also well recognized that the regulation and control of the sale of alcohol and beer are designed to protect the public interest. *A & H Tavern, id.; Anderson v. Moulder*, 183 W.Va. 77, 83, 394 S.E.2d 61, 67 (1990). Although all licensed businesses are subject to some regulation, "the state places more stringent regulations on businesses 'within the category of social and economic evils, such as gaming, the liquor traffic and numerous others.'" *A & H Tavern, supra* 181 W.Va. at 367, 382 S.E.2d at 561, *quoting, Tweel v. W. Va. Racing Commission*, 138 W.Va. 531, 540, 76 S.E.2d 874, 880 (1953), *appeal dismissed*, 346 U.S. 869, 74 S.Ct. 123, 98 L.Ed. 379 (1953).

■ One way that the state controls the liquor traffic is by requiring licenses to sell nonintoxicating beer under *W.Va.Code* 11-16-1 *et seq.* [1992] and to operate a private club serving liquor under *W.Va.Code* 60-7-1 *et seq.* [1991].[2] The power to grant or

**2.** A private club is not prohibited from obtaining a license for the sale of nonintoxicating beer, according to *W.Va.Code* 60-7-15 [1967], which states:

Notwithstanding any other provision of this Code to the contrary, no licensee shall be prohibited from obtaining a license for the sale of nonintoxicating beer under the provisions of article sixteen [§ 11-16-1 et seq.] of chapter eleven of this Code because such licensee sells alcoholic liquors, permits the consumption of alcoholic liquor on his premises,

refuse licenses for the sale of beer and to operate a private club have been delegated to the Commissioner. *See W.Va.Code* 11-16-4(a) [1992] (relating to a beer license); *W.Va.Code* 60-7-10 [1972] (relating to a private club license). In Syllabus Point 1, *A & H Tavern, supra,* we stated:

"There is no inherent right in any individual ... to engage in a business which the state, in the exercise of the police power, has placed under surveillance and permits only as a privilege or franchise." *State ex rel. Morris v. W.Va. Racing Comm'n,* 133 W.Va. 179, 55 S.E.2d 263, 270 (1949) (citing *Hinebaugh v. James,* 119 W.Va. 162, 192 S.E. 177 (1937)).

■ Because licenses to sell beer and operate a private club are not property rights but are privileges granted by the state for a specified time, license applicants must meet the statutory guidelines and the Commissioner's rules and regulations. *W.Va.Code* 11-16-8(c) [1990] provides the following grounds for the refusal of a beer license:

The commissioner may refuse a license to any applicant under the provisions of this article if the commissioner shall be of the opinion:

(1) That the applicant is not a suitable person to be licensed;

(2) That the place to be occupied by the applicant is not a suitable place; or is within three hundred feet of any school or church ...; or

(3) That the license should not be issued for reason of conduct declared to be unlawful by this article.

*W.Va.Code* 60-7-5(a) [1977] also provides that the Commissioner can refuse a private club license and states, in pertinent part:

or is the holder of a federal tax stamp permitting the sale of such alcoholic liquor.

A similar provision is found in *W.Va.Code* 11-16-18(a)(10) [1991] excepting "the holder of a license to operate a private club issued under the provisions of article seven, chapter sixty of this code" from the prohibition against "the sale, possession or consumption of any alcoholic liquors on the premises covered by" a license for the sale of nonintoxicating beer.

Upon receipt of the application referred to in section four [§ 60-7-4] of this article, together with the accompanying fee and bond, the commissioner shall conduct an investigation to determine the accuracy of the matters contained in such application and whether applicant is a bona fide private club of good reputation in the community in which it shall operate. For the purpose of conducting such investigation, the commissioner may withhold the granting or refusal to grant such license for a period not to exceed thirty days. If it shall appear that such applicant is a bona fide private club, of good reputation in the community in which it shall operate and that there is no false statement contained in such application, the commissioner shall issue a license authorizing the applicant to sell alcoholic liquors as provided in section three [§ 60-7-3] of this article, and otherwise shall refuse to issue such license....[3]

In Syllabus Point 3, *A & H Tavern, supra,* we said:

The Nonintoxicating Beer Commissioner is vested with discretion to determine locations suitable for licensed sale of nonintoxicating beer and persons suitable to receive such license, and such discretion will not be interfered with by the Court, unless this discretion is exercised in an arbitrary or fraudulent manner. *Brackman's, Inc. v. City of Huntington,* 126 W.Va. 21, 27 S.E.2d 71, 79 (1943).

Both the chapter of the Code dealing with beer licenses and the chapter of the Code dealing with private clubs authorize the Commissioner to investigate when a license is sought. *See W.Va.Code* 11-16-4(b) [1992] (beer license) [4]; *W.Va.Code* 60-

3. CDS argues that the legislative regulations governing the private club license, 175 C.R.S. 2 [1991], are more restrictive that the statute, and are ambiguous and vague. However given the incomplete record, a discussion of these arguments is not necessary for our decision.

4. *W.Va.Code* 11-16-4(b) [1992] states, in pertinent part:

The commissioner shall appoint an adequate number of competent persons ... for

7–5(a) [1977] (private club license). Indeed the power of the Commissioner to inspect a licensee's premises continues after the licenses have been granted. *See W. Va. Code* 11–16–4(b) [1992] (beer license); *W. Va. Code* 60–7–10 [1972] (private club license).[5]

■ In the present case, the Commissioner, after conducting two on-site inspections and holding two public hearings, denied CDS's license applications. However, when CDS appealed to the circuit court, the Commissioner's inspections, although referred to in his orders, were not detailed in the evidence. Only the public hearing transcripts were reviewed by the circuit court. Based on an incomplete record, the circuit court, finding insufficient direct evidence to deny CDS the licenses, ordered the Commissioner to issue the licenses. Then, the Commissioner requested the case be remanded to include evidence obtained as a result of his inspections. The circuit court denied the remand and ordered the issuance of the licenses.

■ *W. Va. Code* 29A–5–4(g) [1964], the judicial review provision of the Administrative Procedures Act, allows a court to "affirm the order or decision of the agency or *remand the case for further proceedings* (emphasis added)" and specifies the circumstances when a court "shall reverse, vacate or modify the order or decision of the agency." In Syllabus Point 2, *Shepherdstown Volunteer Fire Dept. v. State ex rel State of W. Va. Human Rights Commission,* 172 W.Va. 627, 309 S.E.2d 342 (1983), we stated:

> Upon judicial review of a contested case under the West Virginia Administrative Procedure Act, Chapter 29A, Article 5, Section 4(g), the circuit court may affirm the order or decision of the agency

or remand the case for further proceedings. The circuit court shall reverse, vacate or modify the order or decision of the agency if the substantial rights of the petitioner or petitioners have been prejudiced because the administrative findings, inferences, conclusions, decisions or order are: "(1) In violation of constitutional or statutory provisions; or (2) In excess of the statutory authority or jurisdiction of the agency; or (3) Made upon unlawful procedures; or (4) Affected by other error of law; or (5) Clearly wrong in view of the reliable, probative and substantial evidence on the whole record; or (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."

*In accord* Syllabus Point 1, *FMC Corp. v. W. Va. Human Rights Commission,* 184 W.Va. 712, 403 S.E.2d 729 (1991); *Frank's Shoe Store v. W. Va. Human Rights Commission,* 179 W.Va. 53, 365 S.E.2d 251 (1986).

The Commissioner argues that a remand is appropriate because his decision was based on his inspections and the results of the inspections were not considered by the circuit court. The Commissioner notes that although his orders refer to the inspections, he was unaware of the need to include inspection reports for the circuit court's review. CDS maintains that the Commissioner had ample opportunity to include reports of his inspections and that the delay caused by a remand will cause economic hardship.

Although the reports should have been submitted to the circuit court, their inadvertent omission from the record provides an insufficient basis for requiring the Com-

---

the purpose of . . . investigating applicants for license and places of business of retailers, distributors and brewers. . . .

**5.** Both chapters of the Code identify, as unlawful, certain acts of a licensee and provide for criminal penalties. For example, *W. Va. Code* 11–16–18(a) [1991] (beer license) makes it unlawful "(7) [f]or any licensee to permit in his premises any lewd, immoral or improper entertainment, conduct or practice;" and "(12) [f]or any licensee to permit loud, boisterous or disor-

derly conduct of any kind upon his or her premises or to permit the use of loud musical instruments if either or any of the same may disturb the peace and quietude of the community wherein such business is located. . . ." *W. Va. Code* 60–7–12(a) [1991] (private club license) states that "[i]t shall be unlawful for any licensee, or agent, employee or member thereof, on such licensee's premises to . . . [a]uthorize or permit any disturbance of the peace; obscene, lewd, immoral or improper entertainment, conduct or practice. . . ."

missioner to issue the requested licenses. We also note that any hardship to CDS caused by a remand is minimal because the material should be readily available. Because the circuit court's decision should be based on the "record made before the agency" (*W.Va.Code*, 29A–5–4(f) [1964]), we find that the circuit court should have remanded this case to the Commissioner to supplement the record. In order to ensure a minimal delay, however, we require that the Commissioner's complete record, including his inspection reports, be returned to the circuit court within 30 days after this opinion is initially filed unless CDS shall notify the Commissioner and the Court within three days of the filing of this opinion that it may or will avail itself of the opportunity to apply for rehearing.

For the above stated reasons, the judgment of the Circuit Court of Kanawha County is reversed and the case is remanded to the Commissioner of the West Virginia Alcohol Beverage Control Commission for further proceedings consistent with this opinion.

Reversed and Remanded.