**3.** States retain concurrent jurisdiction over § 301 claims and must apply federal law rather than state contract principles to preempted cases. *Lucas Flour*, 369 U.S. at 102, 82 S.Ct. at 576.

438 S.E.2d 570

**CDS, INC., d/b/a Power Dome, Petitioner Below, Appellee,**

v.

**Harry G. CAMPER, Jr., Administrator, Alcohol Beverage Control Administration, Department of Taxation and Revenue, State of West Virginia, Respondents Below, Appellants.**

**No. 21755.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 22, 1993.

Decided Dec. 9, 1993.

Richard G. Gay, Berkeley Springs, for appellee.

Darrell V. McGraw, Jr., Atty. Gen., Paul E. Jordan, Sr. Asst. Atty. Gen., Charleston, for appellants.

PER CURIAM:

This is the second appeal by Harry G. Camper, Jr., Commissioner of the West Virginia Alcohol Beverage Control Commission (ABC), of an order of the Circuit Court of Kanawha County directing him to issue CDS, Inc., d/b/a Power Dome, the appropriate licenses to operate a private club and to sell nonintoxicating beer. In the original appeal, *CDS, Inc. v. Camper,* 189 W.Va. 63, 428 S.E.2d 44 (1993) (per curiam) (*CDS One* ), this Court remanded the case to the circuit court to allow the Commissioner to supplement the record. Upon consideration of the additional evidence presented on remand, the circuit court ordered the Commissioner to issue CDS the appropriate licenses. Because the record, as supplemented, contains direct evidence justifying the Commissioner's denial of the licenses, we reverse the order of the circuit court.

The case concerns the Commissioner's denial of licenses to CDS, a proposed private club located along State Route 11, near Martinsburg, Berkeley County, West Virginia. Following three personal on-site inspections

and public comments at two public hearings, the Commissioner denied the licenses because of adverse impact on the neighborhood's peace and order, property values and the public welfare. *See CDS One* for more factual information. CDS appealed the Commissioner's denial to the circuit court. Finding the direct evidence insufficient to deny CDS's licenses, the circuit court ordered the Commissioner to issue the licenses. After the circuit court denied the Commissioner's request to supplement the record, the Commissioner appealed to this Court. In *CDS One*, we remanded the case for further proceedings so that the Commissioner could supplement the record with his inspection reports.

The present appeal concerns the circuit court's decision on remand requiring the Commissioner to issue the licenses. On remand, the Commissioner supplemented the original record by adding: (1) the Commissioner's notes dated September 26, 1991 concerning his first inspection of the area; (2) the Commissioner's notes dated November 6, 1991 concerning his second inspection; (3) the Commissioner's notes dated December 17, 1991 concerning his third inspection; (4) notes from various ABC inspectors concerning the club, its impact on the community and community sentiment; and (5) letters from concerned citizens. During the circuit court's hearing, CDS submitted an affidavit concerning the present condition of the surrounding property, sewer service and parking. CDS requests that this Court take judicial notice that "property adjacent to the Power Dome has been developed into a major shopping center...."

After a hearing on remand, the circuit court, characterizing the inspection reports "as no more than a rough draft of his [the Commissioner's] decision and order denying the Petitioner's application for a license," ordered the Commissioner to grant CDS the licenses. The Commissioner again appealed to this Court.

## I

Under *W.Va.Code* 29A–5–4(g) [1964], the standard of judicial review that must be followed by a circuit court in contested cases was stated by this Court in Syl.Pt. 2, *Shepherdstown Volunteer Fire Dept. v. State ex rel. State of W.Va. Human Rights Commission*, 172 W.Va. 627, 309 S.E.2d 342 (1983):

Upon judicial review of a contested case under the West Virginia Administrative Procedure Act, Chapter 29A, Article 5, Section 4(g), the circuit court may affirm the order or decision of the agency or remand the case for further proceedings. The circuit court shall reverse, vacate or modify the order or decision of the agency if the substantial rights of the petitioner or petitioners have been prejudiced because the administrative findings, inferences, conclusions, decisions or order are: "(1) In violation of constitutional or statutory provisions; or (2) In excess of the statutory authority or jurisdiction of the agency; or (3) Made upon unlawful procedures; or (4) Affected by other error of law; or (5) Clearly wrong in view of the reliable, probative and substantial evidence on the whole record; or (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."

*In accord* Syl. pt. 1, *FMC Corp., v. W.Va. Human Rights Commission*, 184 W.Va. 712, 403 S.E.2d 729 (1991); *Frank's Shoe Store v. W.Va. Human Rights Commission*, 179 W.Va. 53, 365 S.E.2d 251 (1986) (review of West Virginia Human Rights Commission's decision); Syl. pt. 3 *CDS One, supra.*

The procedure to be followed by a reviewing court was explained in *Frank's Shoe Store, supra:*

[A] reviewing court must evaluate the record of the agency's proceeding to determine whether there is evidence on the record as a whole to support the agency's decision. The evaluation is conducted pursuant to the administrative body's findings of fact, regardless of whether the court would have reached a different conclusion on the same set of facts. (Citation omitted.)

*Frank's Shoe Store,* 179 W.Va. at 56, 365 S.E.2d at 254.[1]

In Syl.Pt. 3, *W.Va. Nonintoxicating Beer Comm'r v. A & H Tavern,* 181 W.Va. 364, 382 S.E.2d 558 (1989) we stated:

> "The Nonintoxicating Beer Commissioner is vested with discretion to determine locations suitable for licensed sale of nonintoxicating beer and persons suitable to receive such license, and such discretion will not be interfered with by the Court, unless this discretion is exercised in an arbitrary or fraudulent manner." *Brackman's, Inc. v. City of Huntington,* 126 W.Va. 21, 27 S.E.2d 71, 79 (1943).

*In accord* Syl Pt. 2, *CDS One supra.* The Commissioner is authorized to investigate when licenses to sell beer and to operate a private club are sought. *See W.Va.Code* 11–16–4(b) [1992] (beer license)[2]; *W.Va.Code* 60–7–5(a) [1977] (private club license).[3]

Recently in *Morris Nursing Home v. W.Va. Human Rights Commission,* 189 W.Va. 314, 316, 431 S.E.2d 353, 355 (1993), we defined substantial evidence as

> such relevant evidence, on the whole record, as a reasonable mind might accept as adequate to support a finding; it must be enough to justify a refusal to direct a verdict, if the factual matter were tried to a jury. This is something less than the

weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.' The reviewing court is not entitled to reverse the finding of the trier of the facts simply because the reviewing court is convinced that it would have weighed the evidence differently if it had been the trier of the facts. (Citations omitted.)

The issue on appeal is whether the Commissioner's refusal to issue licenses to CDS is "[c]learly wrong in view of the reliable, probative and substantial evidence on the whole record." In this case, the Commissioner personally conducted three on-site inspections and personally held two public hearings. On remand, the Commissioner supplemented the record with his inspection reports. Transcripts of the hearings were part of the *CDS One* record. *See CDS One, supra* 189 W.Va. at 64–65, 428 S.E.2d at 45–46 for a description of the public hearings.

The Commissioner's inspection reports consist of handwritten notes of his personal inspections as well as the handwritten notes of other inspectors. On September 26, 1991, after visiting CDS's site and surrounding area, the Commissioner observed that "[t]he proposed building is an old supermarket very

---

1. In *Frank's Shoe Store,* we noted that federal courts applying the "clearly wrong" standard to Title VII actions have an "extremely limited scope of review." The Supreme Court in *Anderson v. City of Bessemer City, N.C.,* 470 U.S. 564, 573–74, 105 S.Ct. 1504, 1511–12, 84 L.Ed.2d 518 (1985) stated, "This standard plainly does not entitle a reviewing court to reverse the finding of the trier of fact simply because it is convinced that it would have decided the case differently.... If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the fact finder's choice between them cannot be clearly erroneous." *Frank's Shoe Store, supra* 179 W.Va. at 56, 365 S.E.2d at 254, *quoting Anderson, supra.*

2. *W.Va.Code* 11–16–4(b) [1992] states, in pertinent part:

> The commissioner shall appoint an adequate number of competent persons ... for the pur-

pose of ... investigating applicants for license and the places of business of retailers, distributors and brewers....

3. *W.Va.Code* 60–7–5(a) [1977] states, in pertinent part:

> Upon receipt of the application referred to in section four [§ 60–7–4] of this article, together with the accompanying fee and bond, the commissioner shall conduct an investigation to determine the accuracy of the matters contained in such application and whether applicant is a bona fide private club of good reputation in the community in which it shall operate. For the purpose of conducting such investigation, the commissioner may withhold the granting or refusal to grant such license for a period not to exceed thirty days. If it shall appear that such applicant is a bona fide private club, of good reputation in the community in which it shall operate and that there is no false statement contained in such application, the commissioner shall issue a license authorizing the applicant to sell alcoholic liquors as provided in section three [§ 60–7–3] of this article, and otherwise shall refuse to issue such license....

near large residential areas—one right across the street." On November 6, 1991, the Commissioner noted CDS's proposed location is close to "a very nice residential area—[that] apparently has been in existence a long time." The Commissioner estimated the closest residential neighborhood to include 125 homes with 50 to 75 homes near Route 11, which is directly across from CDS's proposed location. CDS's site "is about 400 yards from the very busy intersection of Route 11 and Route 45," which the Commissioner thought was "[p]robably the busiest intersection in Martinsburg." The Commissioner stated that Route 11 is "[v]ery heavily travelled" and "[e]specially congested at times." The Commissioner sketched the surrounding area of CDS's proposed site, noting several residential areas, vacant land and commercial establishments.

The Commissioner reported that the area already had 11 private clubs, most of "which accommodate approximately 25 people at the maximum."[4] These clubs did not cause trouble and were not nuisances. The Commissioner also observed that the proposed club was a "huge, very large one that hopes to have crowds of 200–500 people" by offering " 'name' Country and Western and Rock musicians." The Commissioner predicted that the large crowds will "no doubt be parking on adjacent properties, will cause loud noises on the parking lot and from the club (music)." The club's late hours "will no doubt create nuisances and disturbances—overflowing to adjacent property." The Commissioner estimated that the club would "definitely lessen and lower the market values of the residences in the area, as well as be a bad nuisance to those residing in the area." Because of the adjacent residential area, the Commissioner stated that "[t]his type of club will certainly depreciate the values of their [residential] property, and disturb their peace and tranquility, and the use and enjoyment of their property." The Commissioner concluded that "[t]o place a club of this size, type, and nature in the middle of this area will be a gross injustice to the residents and businesses already there."

On November 7, 1991, after the Commissioner toured CDS's facility, he noted that renovations continued on the "extremely large" interior of the facility. On December 17, 1991, the Commissioner reported that he again had inspected the site of and the neighborhood adjacent to CDS's proposed club and that "[n]othing has changed and my findings are essentially the same."

Five reports from ABC inspectors outlined the following potential problems connected with CDS's location: (1) "upset[ting] this [residential] neighborhood;" (2) disturbing other business; (3) causing parking problems; and (4) intensifying traffic problems. The inspectors requested that the Commissioner personally inspect the area and conduct a public hearing.

CDS argues that the Commissioner has miscategorized the area surrounding their proposed club as residential rather than commercial. CDS maintains that because of the commercial nature of the area, their club would not create any additional problems. In support of their factual interpretation, CDS relies on testimony of their corporate officers who have invested substantial money in the club's renovations. *See CDS One* 189 W.Va. at 64–65, 428 S.E.2d at 45–46. At the same time, CDS argues that the Commissioner's position be rejected because it is based on testimony from local residents, local business persons, and local law enforcement personnel as well as the Commissioner's three personal site visits.

■ Upon reviewing the record as supplemented, we conclude that substantial evidence supports the Commissioner's decision denying CDS the licenses for a private club and to sell beer. The Commissioner's findings of fact were based on his personal on-site inspections, an option not afforded at appellate review. The Commissioner's decision to deny CDS the licenses was an exercise of discretion, and the record as supplemented shows that the Commissioner did not exercise his discretion "in an arbitrary or fraudulent manner." Syl. pt. 3, in part, *Non-*

4. CDS argues that the large club Honey Bears, located within two miles of their site, was issued a license in September 1991.

*intoxicating Beer Comm'r, supra.* The circuit court should not have reversed the Commissioner's findings "simply because it is convinced that it would have decided the case differently...." *Frank's Shoe Store, supra* 179 W.Va. at 56, 365 S.E.2d at 254, *quoting Anderson, supra* 470 U.S. at 573, 105 S.Ct. at 1511 (see note 1). In this case, the circuit court misapplied the standard of review set forth in *W.Va.Code* 29A-5-4(g) [1964] by substituting its judgment for that of the Commissioner's.

For the above stated reasons, the order of the Circuit Court of Kanawha County is reversed and this case is remanded with directions to reinstate the order of the Commissioner refusing to issue the licenses necessary to operate a private club and to sell non-intoxicating beer.

Reversed and remanded.