# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Unlimited Ventures, Inc., d/b/a Rumorz,**
**Petitioner Below, Petitioner**

**vs)  No. 13-0677** (Kanawha County 12-AA-1)

**West Virginia Alcohol Beverage Control**
**Administration, Commissioner Ronald Moats,**
**Respondent Below, Respondent**

**FILED**

March 28, 2014
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Unlimited Ventures, Inc., doing business as Rumorz, by counsel Floyd M. Sayre, III, appeals an order of the Circuit Court of Kanawha County entered May 16, 2013, that affirmed an order of Respondent West Virginia Alcohol Beverage Control Administration, Commissioner Ronald Moats ("respondent" or "ABCA"), revoking petitioner's Class A private club license.  Respondent, by counsel Harden C. Scragg, Jr., filed a response in support of the circuit court's order to which Petitioner filed a reply.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

At all times relevant, Petitioner Unlimited Ventures, Inc. operated Rumorz, a night club featuring exotic dancing located in Weirton, West Virginia.  On July 9, 2011, respondent conducted an undercover compliance inspection of petitioner's nightclub after receiving a complaint involving illegal drug activity and underage drinking. ABCA agent Dave Sapp entered the nightclub with another agent and was approached by an exotic dancer, who asked him if he wanted to go to a private room with her.  Another Rumorz employee (a bouncer) walked by and told Agent Sapp that she would "rock his world."  The bouncer told the dancer that Agent Sapp was "his friend" and that she should take him downstairs and "rock his world."  The dancer told Agent Sapp that all of their activities would be mutual and that if they had sex, there must be protection.  The dancer asked Agent Sapp if he had condoms.

Approximately one hour later, ABCA Agent Teri Sneberger, Agent Sapp's supervisor, entered the license premised with Agents John Short, John Mattern, Jr., and Donna Kafer.  They were assisted by Sgt. Steven Falbo of the Weirton Police Department and other officers at the

1

request of Agent Sneberger.[1] Agents Sneberger and Short proceeded to the private rooms downstairs. Upon hearing noises coming from the private rooms area, Agent Sneberger pulled back a curtain and observed a naked female having sexual intercourse with a man. The female was later identified as an exotic dancer employed by Rumorz and the man was a Rumorz patron. Shortly thereafter, Agent Sneberger also heard noises coming from the other side of the curtain. She pulled the curtain back and discovered another exotic dancer employed by Rumorz having sexual intercourse with another Rumorz patron.[2] Anthony Cammel, the president of Unlimited Ventures and the general manager of Rumorz, was charged in Hancock County Magistrate Court with maintaining a location for the purpose of prostitution.[3]

The nightclub's private club license was suspended and the ABCA filed a petition seeking revocation of petitioner's private club license, citing violations of 175 C.S.R. § 2-5.1.1.b.1.A – D., "Guidelines for Strippers."[4] An administrative hearing was conducted before

---

[1]Agent Sneberger requested police assistance after becoming concerned that she was unable to contact Agent Jason Nestor, who entered Rumorz with Agent Sapp and who contacted Sneberger when he was propositioned by a Rumorz dancer.

[2]All four of these individuals were cited for criminal prostitution. The charges against at least two of the individuals charged were subsequently dismissed.

[3]This charge was subsequently dismissed.

[4]With regard to stripping or erotic dancing, the ABCA Commissioner has promulgated rules and regulations providing that no licensee, agent, employee or member thereof shall authorize or permit any obscene, lewd, immoral or improper entertainment, conduct or practice in a licensed premises, insofar as these practices are prohibited by law. W.Va. Code § 60-7-12(a)(2) (1996). *See* West Virginia Code § 61-8-5 (1943) (providing that prostitution or maintaining or operating a place for the purpose of prostitution or maintaining a place which permits, aids or abets prostitution or knowing that the place is used for the purpose of prostitution are acts and practices prohibited by law). More specifically, ABCA regulations provide that "[e]ntertainers in 'a state of undress' must be apart and separate from patrons[,]" 175 C.S.R. § 2-5.1.1.b.1.A; that "[t]here can be no physical contact during a performance between the entertainers and the patrons or employees of the club. This means no patron or employee may touch a performer[,]" 175 C.S.R. § 2-5.1.1.b.1.B; that "[a]ctions by the entertainers may not include the actual accomplishment of any sexual acts, which would be considered inappropriate for public view by the public generally[,]" 175 C.S.R. § 2-5.1.1.b.1.C; and that

> [a]ll acts during which entertainers are in a state of undress will take place on stage, which must be separate and apart from patrons and/or employees. Upon leaving the stage, entertainers must go directly to the assigned dressing room where he or she must dress adequately by covering himself or herself prior to mingling among patrons and other employees.

175 C.S.R. § 2-5.1.1.b.1.D.

2

Hearing Examiner Carole Bloom on August 25, 2011. In addition to the foregoing evidence, the record includes written statements by at least two of the exotic dancers previously mentioned which indicated that they engage in either sexual intercourse or other inappropriate sexual activity in the nightclub's private rooms and that half of the money earned is given to the nightclub. Although the dancers subsequently executed affidavits contradicting these written statements, the hearing examiner concluded, *inter alia*, that the ABCA proved, by a preponderance of the evidence, that petitioner, through its agents and employees, violated various statutes and rules by permitting two Rumorz employees to entertain patrons in states of undress and to engage in sexual acts for money with patrons in private rooms on the licensed premises. The hearing examiner recommended that petitioner's private club license be revoked. The ABCA Commissioner adopted the hearing examiner's recommended decision by order entered December 22, 2011. By order entered May 16, 2013, the circuit court affirmed the ABCA Commissioner's order. It is from this order that petitioner now appeals.

An appeal taken from an order of the circuit court following an appeal from a decision of the ABCA Commissioner is guided by the following standard of review:

> Since a reviewing court is obligated to give deference to factual findings rendered by an administrative law judge, a circuit court is not permitted to substitute its judgment for that of the hearing examiner with regard to factual determinations. Credibility determinations made by an administrative law judge are similarly entitled to deference. Plenary review is conducted as to the conclusions of law and application of law to the facts, which are reviewed de novo.

Syl. Pt. 1, in part, *Cahill v. Mercer Cnty Bd. of Educ.*, 208 W.Va. 177, 539 S.E.2d 437 (2000). *See* Syl. Pt. 1, *Muscatell v. Cline*, 196 W.Va. 588, 474 S.E.2d 518 (1996) (holding that "[o]n appeal of an administrative order from a circuit court, this Court is bound by the statutory standards contained in W.Va. Code § 29A-5-4(a) and reviews questions of law presented *de novo;* findings of fact by the administrative officer are accorded deference unless the reviewing court believes the findings to be clearly wrong."). With these principles in mind, we review the circuit court's decision to affirm the order of the ABCA Commissioner.

Petitioner's first assignment of error is that the circuit court erred in affirming the decision of the ABCA Commissioner because the hearing examiner's findings were clearly erroneous and unsupported by the evidence. Petitioner contends that the evidence demonstrated that, prior to the subject incident, it met or exceeded ABCA requirements and was in good standing with all regulatory agencies, maintained its own strict rules and regulations prohibiting illegal activity such as those alleged herein, and, during the previous four years, had only one ABCA citation, which was for underage drinking. Petitioner also argues that, given that some of the witnesses disagreed about what transpired, the hearing examiner's credibility determinations were clearly wrong and, further, that the evidence failed to demonstrate that any of petitioner's employees committed acts of prostitution or that owner Anthony Cammel knew or should have known that any illicit activity was taking place at the nightclub. Finally, petitioner argues that the circuit court "confused the facts" of other cases with the facts presented herein with regard to its finding that one of the dancers asked Agent Sapp if he had a condom and that she was going

3

to "rock his world." Petitioner avers that the record does not support this finding.

Upon our review of the record, this Court concludes that the circuit court's findings were supported by the evidence and were not clearly wrong. The hearing examiner expressly found the testimony of the ABCA agents and other law enforcement to be credible, while also finding the testimony of various Rumorz employees, including owner Anthony Cammel, to be *not* credible. Given the testimony of the ABCA agents and the fact that the exotic dancers involved gave written statements that they contradicted in subsequent affidavits, this Court will not disturb the hearing examiner's credibility findings, as they are entitled to deference on appeal. *See Cahill*, 208 W.Va. at 177-78, 539 S.E.2d at 437-38, at syl. pt. 1. The hearing examiner correctly found that petitioner's witnesses were not credible particularly as to their claims that they had no knowledge that exotic dancers employed at Rumorz were violating ABCA statutes and regulations, "including the actual accomplishment of sexual acts which would be considered inappropriate for public view and including entertaining in a state of undress in private rooms on the licensed premises." *See* W.Va. Code § 60-7-12(a)(2); 175 C.S.R. § 2-5.1.1.b.1.C. Furthermore, notwithstanding petitioner's argument to the contrary, the record—and in particular, Agent Sapp's written statement—reflects that one of the dancers told him that, "if we had sex there would have to be protection. She asked if I had condoms, and I told her no." Thus, petitioner's contention that the circuit court somehow "confused the facts" herein with other cases is without merit. Finally, and most significantly, Agents Sneberger and Short both testified that they personally observed dancers employed by Rumorz engaging in prohibited sexual activity with patrons on the nightclub's premises, which clearly violated ABCA rules and regulations.

Petitioner's remaining assignment of error is that the circuit court erred in affirming the ABCA Commissioner's decision to revoke its private club license. Petitioner argues that revocation is an excessive penalty and was not justified and that the Commissioner failed to consider the fact that petitioner had no prior violations.[5] We disagree.

This Court has previously held that "'"[t]here is no inherent right in any individual . . . to engage in a business which the state, in the exercise of the police power, has placed under surveillance and permits only as a privilege or franchise."'" Syl. Pt. 1, *CDS, Inc., d/b/a Power Dome v. Camper*, 189 W.Va. 63, 428 S.E.2d 44 (1993) (internal citations omitted). Given that licenses to sell alcohol and operate a private club are privileges granted by the state, licensees must satisfy statutory guidelines and ABCA's rules and regulations. *Id.* at 68, 428 S.E.2d at 47. In the present case, there was more than sufficient evidence presented below supporting the

---

[5]Petitioner also argues that the penalty of revocation violated equal protection principles given that another nightclub located in Weirton, the Hurricane Club, was cited for similar violations of ABCA rules and regulations but received only a three-day suspension. Petitioner further argues that, at the time the citations were issued against Rumorz, the City of Weirton sought to have the nightclub declared "a nuisance." However, petitioner states that once the city became aware that Rumorz was being treated differently from the Hurricane Club, it withdrew the nuisance action against Rumorz. Despite petitioner's representations to the contrary, it fails to point to any evidence in the record in support of its representations in this regard. We, therefore, conclude that this argument is without merit.

4

hearing examiner's conclusion that petitioner, through its agents and employees, blatantly violated statutory guidelines and ABCA rules and regulations by permitting its dancers to entertain patrons while in a state of undress and to engage in sexual acts for money with patrons in a private room on the licensed premises. *See* West Virginia Code § 60-7-12; 175 C.S.R. § 2-5.1.1.b.1.A through D. Such violations are grounds for revocation of a private club license. W.Va. Code § 60-7-13(a)(1) (1993) (providing, in relevant part, that "[u]pon a determination by the commissioner that a licensee has: (i) [v]iolated the provisions of article sixteen, chapter eleven, or of this chapter; (ii) acted in such a way as would have precluded initial or renewal licensure; or (iii) violated any rule or order promulgated by the commissioner, the commissioner may . . . (1) [r]evoke the licensee's license[.]"). Accordingly, the circuit court did not commit error by affirming the ABCA Commissioner's order revoking petitioner's private club license.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** March 28, 2014

**CONCURRED IN BY:**

Chief Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II