IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**DAVID J. LECHIARA, ESTHER FURBEE, and LASCALA RESTAURANT LLC, d/b/a COCO BAY SPORT CAFÉ 2.0, Applicant Below, Petitioner**

**FILED
December 22, 2025**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**v.)     No. 25-ICA-200**

**FREDRIC L. WOOTON, in his official capacity as COMMISSIONER of the STATE OF WEST VIRGINIA ALCOHOL BEVERAGE CONTROL ADMINISTRATION, Respondent Below, Respondent**

## MEMORANDUM DECISION

Petitioner David J. Lechiara, Esther Furbee, and LaScala Restaurant LLC, d/b/a Coco Bay Sport Café 2.0 (collectively "Coco Bay"), appeals the March 5, 2025, order of Respondent Fredric L. Wooton, in his official capacity as Commissioner ("Commissioner") of the West Virginia Alcohol Beverage Control Administration ("ABC"). In his order, the Commissioner refused to issue Coco Bay a Class A/Private Club license to sell alcohol on its premises. The Commissioner filed a response.[1] Coco Bay did not file a reply.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the Commissioner's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On April 24, 2024, Coco Bay applied to the ABC for a Class A/Private Club license for the purposes of selling alcoholic beverages at its retail establishment. The application listed Mr. Lechiara and Ms. Furbee as Coco Bay's managers[2] and stated that they each

---

[1] On appeal, Coco Bay is represented by Richard J. Lindroth, Esq. The Commissioner is represented by Attorney General John B. McCuskey, Esq., Deputy Attorney General Cassandra L. Means-Moore, Esq., and Assistant Attorney General Christopher S. Etheredge, Esq.

[2] On Coco Bay's application, Mr. Lechiara and Ms. Furbee are listed as "managing members"; however, for purposes of this decision, we use the synonymous term "manager(s)" to comport with the language of West Virginia Code § 60-1-5(10) (2020), which states:

owned a fifty-percent interest in the business. As owners and managers of Coco Bay, Mr. Lechiara and Ms. Furbee were also required to, among other things, disclose their criminal history, including the date and location of "all convicted arrests," the county and state of the presiding court, and the disposition of the case. Ms. Furbee responded with "None-See Attached," and Mr. Lechiara listed two arrests, a 1984 conspiracy charge in Ohio and a 2007 "sale" federal charge from the Northern District of West Virginia.

That same day, the ABC provided Mr. Lechiara and Ms. Furbee a letter indicating that there were several deficiencies in Coco Bay's application. For example, the letter noted that the application lacked complete bond information, a letter of good standing from the state tax department, and that the business was listed as non-compliant on the secretary of state's website. The ABC also requested that Ms. Furbee contact the ABC to discuss discrepancies in her criminal history. Also on that day, Ms. Furbee provided the ABC with an updated criminal history disclosure, which identified a worthless check, two DUIs, driving on a revoked license and no insurance, and grand larceny charges.

Also on April 24, 2024, the record indicates that the Commissioner's licensing manager reluctantly met with Mr. Lechiara at the ABC office without an appointment. The licensing manager indicated that during the meeting, Mr. Lechiara attempted to expedite Coco Bay's pending application by glossing over his past criminal history and history of noncompliance with the ABC while at the same time making disparaging statements about former ABC enforcement agents who worked with the agency years earlier when Mr. Lechiara operated a former ABC-licensed establishment and held a hidden ownership interest in a different ABC-licensed business operated by Ms. Furbee. The order on appeal notes that both Mr. Lechiara and Ms. Furbee were issued nonrenewal notices by the ABC for those establishments after a series of fines and violations, including multiple instances of serving minors or intoxicated persons, failure to ID patrons, and operating after hours. It was also noted that neither individual has been issued another ABC license since.

---

"Manager" means an individual who is the applicant's or licensee's on-premises employee, member, partner, shareholder, director, or officer who meets the licensure requirements of § 11-16-1 *et seq.* of this code and rules promulgated thereunder who actively manages, conducts, and carries on the day-to-day operations of the applicant or licensee with full and apparent authority or actual authority to act on behalf of the applicant or licensee. Such duties include but are not limited to: coordinating staffing; reviewing and approving payroll; ordering and paying for inventory, such as nonintoxicating beer, wine, and liquor, as applicable; and managing security staff, security systems, video and other security equipment; and any further acts or actions involved in managing the affairs of the business, on behalf of owners, partners, members, shareholders, officers, or directors.

On April 25, 2024, the ABC e-mailed Mr. Lechiara a list of twenty-five criminal charges and requested a detailed explanation for each. The charges, which the ABC's list indicated Mr. Lechiara incurred between 1969 and 2020, related to, among other things, drug possession or distribution (multiple), domestic violence (multiple), grand larceny, fraud, obstruction, destruction of property (multiple), shoplifting (multiple), and driving on a revoked or suspended license (multiple).

On May 2, 2024, Coco Bay provided a letter of good standing from the West Virginia Tax Division, and on May 9, 2024, Mr. Lechiara responded to ABC's April 25, 2024, inquiry regarding his criminal history by providing a written affidavit to amend his criminal history and add twenty-two of the twenty-five criminal charges.

On May 10, 2024, ABC sent Mr. Lechiara and Ms. Furbee additional questions about Coco Bay's application. For example, ABC inquired about Mr. Lechiara's and Ms. Furbee's involvement with each other's previous ABC-licensed establishments. Mr. Lechiara was asked to provide certified criminal records for all convicted arrests with an explanation of every conviction. Mr. Lechiara was also asked to explain how his life has changed to make him a suitable person for ABC licensure, and if granted a license, what steps would he take to lawfully operate the business. Mr. Lechiara and Ms. Furbee were also asked to provide additional information regarding the operation of their former ABC-licensed establishments, including the circumstances which led to the nonrenewal of their ABC licenses.

Ms. Furbee did not respond to the ABC's inquiry. However, on May 16, 2024, and June 28, 2024, the ABC received letters from Mr. Lechiara, which were nonresponsive to the ABC's inquiries. Rather, his letters vouched for his and Ms. Furbee's reputations and opined that his criminal history was insignificant.[3] Mr. Lechiara did not provide certified criminal records as requested. He did, however, claim that a 2020 shoplifting charge was dismissed but ABC investigators obtained records that established a misdemeanor conviction and imposition of a fine and suspended sentence for the offense.

On July 26, 2024, Mr. Lechiara provided a four-page letter and portion of Coco Bay's restaurant menu to the ABC. The correspondence contained many of the same

---

[3] For example, in the May 16, 2024, letter, Mr. Lechiara acknowledged making poor life decisions in the past and stated that while he was not trying to "diminish the seriousness of [his] wrongdoing," his convictions were not for "murders, rapes, attempted murders, child abuse, malicious woundings, convictions of assaults, deadly weapons, arsons, crimes against persons, convicted domestic batteries, [and] other various crimes or crimes against people[.]" Mr. Lechiara continued this theme in his June 28, 2024, letter, wherein he opined that his criminal history was "**VERY MUCH OVERSTATED**" by the ABC.

statements Mr. Lechiara had made previously in his response to the ABC inquiries, alleged that the ABC and Commissioner were not responding to his inquiries and demands, and reiterated that his criminal history was irrelevant.

On August 7, 2024, the Commissioner entered an initial order refusing Coco Bay's application. In this order, the Commissioner highlighted that Coco Bay's application was incomplete, Mr. Lechiara and Ms. Furbee were not forthcoming, provided false statements in their application, and failed to respond to the ABC's request for additional information. The Commissioner found that based upon Mr. Lechiara's and Ms. Furbee's criminal histories and exceptionally poor operation history as former ABC licensees, they did not possess good moral character, and that their actions as former ABC licensees showed a general lack of respect for the law. The Commissioner concluded that Mr. Lechiara and Ms. Furbee were not suitable persons to hold an ABC license.

Coco Bay filed a petition for hearing on August 19, 2024, to challenge the Commissioner's August 7, 2024, order. On August 23, 2024, the Commissioner entered an order setting the matter for hearing before the ABC's hearing officer on September 23, 2024. On September 16, 2024, Mr. Lechiara and Ms. Furbee, appearing pro se, filed an omnibus discovery motion on behalf of Coco Bay. On September 18, 2024, the ABC filed a motion to continue the September 23, 2024, hearing, noting that the omnibus discovery motion was filed less than five days prior to the administrative hearing, and under the West Virginia Rules of Civil Procedure, it was entitled to thirty days to respond. On September 19, 2024, Mr. Lechiara and Ms. Furbee filed a joint response objecting to the motion to continue, demanding the hearing proceed as scheduled, and stating that there was no impediment to the ABC obtaining the requested discovery prior to the scheduled hearing. On September 24, 2024, Coco Bay retained counsel.[4] The motion to continue was granted and the matter was rescheduled for November 7, 2024.

At the conclusion of the hearing, the ABC and Coco Bay agreed to a briefing schedule to submit proposed findings of fact and conclusions of law. Specifically, it was agreed that proposed orders would be submitted to the hearing officer by January 8, 2025, and that the parties could supplement their findings until January 13, 2025. The hearing officer indicated that a decision would be issued by February 13, 2025. Counsel for the parties timely submitted proposed findings of fact and conclusions of law.[5]

---

[4] Coco Bay retained counsel who filed a notice of appearance on September 24, 2024. However, after the administrative hearing, but prior to entry of the hearing examiner's decision, the record reflects that counsel filed a motion to withdraw as counsel after being discharged by Coco Bay on February 12, 2025. That motion was granted on March 3, 2025.

[5] Acting on behalf of Coco Bay and without counsel's knowledge, Mr. Lechiara and Ms. Furbee filed a motion on December 27, 2024, seeking leave to provide additional

Then, on February 12, 2025, Mr. Lechiara filed a pro se "Traverse Response to [ABC]'s Proposed Findings of Fact and Conclusions of Law." This twelve-page filing challenged the ABC's proposed order and made additional arguments in support of Coco Bay's application. The ABC filed a motion to strike the filing that same day, arguing that Mr. Lechiara's filing was procedurally and substantively objectionable, as it contained untimely arguments on the merits and contravened the deadlines set forth by the hearing officer. On March 3, 2025, Mr. Lechiara responded in opposition to the ABC's motion, contending that his response was proper because Coco Bay had discharged its counsel, and he was unaware of any filing deadlines. The ABC filed a reply in which it reiterated the grounds set forth in the motion to strike, and noted that Mr. Lechiara offered no argument to dispel the ABC's contention that the filing was outside of the briefing schedule.

The hearing officer submitted a decision to the Commissioner on February 28, 2025, which stated that Mr. Lechiara's Traverse Response would not be considered for the reasons stated by the ABC in its motion to strike, and recommended that the Commissioner's August 7, 2024, refusal of Coco Bay's application be upheld. In their decision, the hearing examiner found that neither Mr. Lechiara's nor Ms. Furbee's hearing testimony was credible, and that a preponderance of the evidence established that both were unsuitable persons to hold an ABC license. Specifically, it was determined that Mr. Lechiara was less than forthcoming and grossly dismissive about the significance of his fifty-five-year criminal history; he failed to submit a satisfactory plan to the ABC outlining how he would lawfully operate his business under an ABC license; and he lost his prior ABC license based upon a poor operational history, which included a series of underage violations, after-hours operations, and general unsuitability. It was also determined that Mr. Lechiara lacked good moral character, in that he exhibited a general lack of respect for the law and authority, including the ABC regulations.

The hearing officer made similar observations regarding Ms. Furbee. Namely, it was determined that Ms. Furbee lacked good moral character because she also lost her prior ABC license due to poor operational control stemming from hidden ownership issues involving Mr. Lechiara and multiple violations for serving the underaged and after-hours operations. She was not forthcoming about her criminal history and exhibited a lack of respect for the law and ABC regulations. The decision also found that Coco Bay's application was layered with deficiencies and misrepresentations, Mr. Lechiara and Ms. Furbee were nonresponsive to the ABC's inquiries for information germane to Coco Bay's application, and that the evidentiary record provided more than ample evidence to conclude the application should be denied. The decision also recommended imposing court costs upon Coco Bay.

testimony and facts, which they claim were not addressed by the hearing officer at the November 7, 2024, hearing. After learning of the filing from opposing counsel, Coco Bay's counsel indicated through an e-mail dated January 3, 2025, that he had spoken with Mr. Lechiara, he remained counsel of record, and that the motion was withdrawn.

On March 5, 2025, the Commissioner entered his final order, which adopted the majority of the hearing examiner's decision, but declined to impose court costs upon Coco Bay. This appeal resulted, and our standard of review is as follows:

> The court may affirm the order or decision of the agency or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the agency if the substantial rights of the petitioner or petitioners have been prejudiced because the administrative findings, inferences, conclusions, decision, or order are:
>
> (1) In violation of constitutional or statutory provisions;
> (2) In excess of the statutory authority or jurisdiction of the agency;
> (3) Made upon unlawful procedures;
> (4) Affected by other error of law;
> (5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or
> (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

W. Va. Code § 29A-5-4(g) (2021); *accord* W. Va. Code § 60-7-13a(d) (2013) (specifying that West Virginia Code § 29A-5-4 applies to appellate review of a Commissioner's decision).

On appeal, we are presented with four arguments. First, Coco Bay contends the Commissioner did not have authority to rule upon the application; second, it is argued that the Commissioner erred by ruling on an incomplete application; third, the Commissioner erred by relying upon Mr. Lechiara's and Ms. Furbee's prior bad acts as a basis to refuse Coco Bay's application; and fourth, the Commissioner erred by ignoring Mr. Lechiara's Traverse Response.

However, upon review, we decline to address Coco Bay's first two arguments as they were not raised below, but rather, are presented for the first time on appeal. Accordingly, they have been waived for the purposes of appellate review. "Our general rule is that nonjurisdictional questions raised for the first time on appeal, will not be considered. Further, if a party fails to properly raise a nonjurisdictional defense during an administrative proceeding, that party waives the defense and may not raise it on appeal." *Hoover v. W. Va. Bd. of Med.*, 216 W. Va. 23, 26, 602 S.E.2d 466, 469 (2004) (cleaned up). Thus, the Court turns its attention to Coco Bay's two remaining arguments, which we will address in turn.

To that end, Coco Bay argues that it was error for the Commissioner to give any consideration to Mr. Lechiara's and Ms. Furbee's criminal and ABC histories when ruling upon the merits of the application. However, Coco Bay offers no legal authority to support

6

this position. "A skeletal 'argument,' really nothing more than an assertion, does not preserve a claim." *State v. Kaufman*, 227 W. Va. 537, 555 n.39, 711 S.E.2d 607, 625 n.39 (2011) (quotations and citations omitted). Further, we remind Coco Bay of Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure, which states:

> Argument: The brief must contain an argument clearly exhibiting the points of fact and law presented, the standard of review applicable, and citing the authorities relied on, under headings that correspond with the assignments of error. The argument must contain appropriate and specific citations to the record on appeal, including citations that pinpoint when and how the issues in the assignments of error were presented to the lower tribunal. The Intermediate Court . . . may disregard errors that are not adequately supported by specific references to the record on appeal.

This shortcoming aside, the Court concludes that the record in this matter aptly supports the Commissioner's denial of Coco Bay's application.

When applying for an ABC private club license, West Virginia Code § 60-7-4 (2020) sets forth several requirements. For example, eligibility for licensure is contingent upon all listed managers on the application "passing a background investigation, . . . being a suitable person, being of good morals and character, being capable of operating a bona fide private club of good reputation in the community, and other requirements[.]" W. Va. Code § 60-7-4(a)(6), in part. This statutory scheme also requires the applicant and manager to submit "[s]uch other information as the commissioner may reasonably require . . . which shall include, but not be limited to, the criminal records, if any, of each member of the applicant's governing board or its officers and directors who have been convicted of a felony or a crime involving moral turpitude." W. Va. Code § 60-7-4(11).

West Virginia Code § 60-7-5(a) (2020) provides that the Commissioner can refuse a private club license and states:

> Upon receipt of a completed application referred to in § 60-7-4 of this code, together with the accompanying fee and bond, the commissioner shall conduct an investigation to determine the accuracy of the matters contained in such completed application and whether applicant is a bona fide private club of good reputation in the community in which it shall operate. For the purpose of conducting such investigation, the commissioner may withhold the granting or refusal to grant the license for a period not to exceed 30 days or until the applicant has completed the conditions set forth in this article and in § 60-7-4(a) of this code, all as determined by the commissioner. If it appears that the applicant is a bona fide private club of good reputation in the community in which it shall operate and that the applicant and the manager in the application or a licensee and manager in the renewal application,

subject to investigation set forth in § 60-7-4 of this code, have made no false statement, no material misrepresentations, no hidden ownership, or persons with an undisclosed pecuniary interest, and no omissions or failures to disclose in the application, as determined by the commissioner shall issue a license authorizing the applicant to sell alcoholic liquors as provided in § 60-7-3 of this code, and otherwise shall refuse to issue the license[.]

This statutory language is complemented by West Virginia Code § 60-4-13 (1935), which provides, in part, that the commissioner "shall refuse the [ABC] license if . . .[t]he applicant is not a suitable person."[6] Parallel language can also be found within the applicable regulations for private club licensure. *See generally* W. Va. Code. State R. §§ 175-2-3.1 to 3.7 (2024).[7] For instance, the regulations require private club applications to include the arrest record of the applicant and manager. *See* W. Va. Code R. §175-2-3.1.6. The Commissioner is required to investigate all matters that could result in denial of the application. *See* W. Va. Code R. §§ 175-2-3.1.6a and -3.2.6. The regulations provide that the application is to be refused if the application contains a false statement. *See* W. Va. Code R. § 175-2-3.2.1.d. And, as outlined by West Virginia Code of State Rules §§ 175-2-3.2.2, -2.2.c, and -2.2.d, the Commissioner may refuse an application if documented evidence reasonably shows that an applicant or manager:

Has demonstrated, either by his or her police record or by his record as a former licensee under W. Va. Code § 11-16-1 *et seq.* or Chapter 60 of the West Virginia Code a lack of respect for law and order, generally, or for the laws and rules governing the sale and distribution of alcoholic beverages or nonintoxicating beer; [or] Has misrepresented a material fact in applying to the Commissioner for a license[.]

This collection of authority overwhelmingly establishes that the Commissioner was within his statutory and regulatory authority to consider Mr. Lechiara's and Ms. Furbee's

---

[6] Notably, our state code has similar requirements for ABC beer licenses. *See, e.g.,* W. Va. Code § 11-16-8(a)(1) (2023) (an ABC license applicant must, among other things, "pass a background investigation, . . . be a suitable applicant, and meet other requirements, . . . all in the interest of protecting public health and safety and being a suitable applicant or licensee"; W. Va. Code § 11-16-8(c) (authorizing the commissioner to investigate using comparable language to W. Va. Code § 60-7-5); W. Va. Code § 11-6-8(d)(1) (permitting refusal of an ABC license if "the commissioner is of the opinion . . . that the applicant or the manager is not a suitable applicant."); *CDS, Inc. v. Camper*, 189 W. Va. 63, 66-67, 428 S.E.2d 44, 47-48 (1993) (briefly noting the interplay between the statutes governing private club licenses and beer licenses).

[7] Although recently amended, we refer to the 2024 version of the regulations because they were in effect at the time of the events giving rise to this appeal.

past criminal and ABC histories and to rely upon the same to refuse Coco Bay's application. As articulated by the Commissioner's order, the documented evidence established that Mr. Lechiara and Ms. Furbee lacked credibility, misrepresented and downplayed their past criminal and ABC histories, and showed a lack of respect for authority and the law. In West Virginia, it is well settled that the ABC Commissioner "is vested with discretion to determine . . . persons suitable to receive [an ABC] license, and such discretion will not be interfered with by the Court, unless this discretion is exercised in an arbitrary or fraudulent manner." Syl. Pt. 3, in part, *W. Va. Nonintoxicating Beer Comm'r v. A & H Tavern*, 181 W. Va. 364, 382 S.E.2d 558 (1989) (quoting *Brackman's, Inc. v. City of Huntington*, 126 W. Va. 21, 27 S.E.2d 71, 79 (1943)). Here, the Commissioner considered the evidence and made the discretionary determination that Mr. Lechiara and Ms. Furbee were not suitable persons for an ABC license. The Court cannot conclude that the Commissioner abused his discretion or otherwise committed reversible error under the governing standard of review.

Lastly, we find no merit in Coco Bay's remaining argument that the Commissioner erred by ignoring Mr. Lechiara's Traverse Response. Once again, Coco Bay offers no authority to support its argument. In limited argument, Coco Bay contends that the submission "clarified the facts and responded to what [Mr. Lechiara] believed were specious arguments by the [ABC]." However, Coco Bay does not claim that it was denied a fair administrative hearing, and acknowledges in its brief that the hearing examiner (and by extension, the Commissioner) was free to give the response the weight he thought it deserved. On this issue, we give deference to the Commissioner and decline to disturb his decision to disregard Mr. Lechiara's Traverse Response.

Accordingly, we find no error and affirm the Commissioner's March 5, 2025, order.

Affirmed.

**ISSUED:** December 22, 2025

**CONCURRED IN BY:**

Chief Judge Charles O. Lorensen
Judge Daniel W. Greear
Judge S. Ryan White

9